Sewall, C. J.
In this action of covenant broken, a verdict has been taken for the plaintiffs, subject to the opinion of the Court upon the questions made and reserved at the trial, as to the competency of the evidence, and the legal result of the facts proved. These questions are to be examined, in order to determine whether the defendant is or is not liable; and as the determination shall be, either judgment will be rendered on the verdict, or the verdict will be set aside, and a new trial is then to be granted, on the motion of the defendant.
The defendant is charged upon certain alleged covenants of seisin and title, contained in a deed and conveyance, made by him to the plaintiffs, of a certain tract of land in Biddeford, dated July 20, 1801. The plaintiffs negative the alleged covenants, and aver particularly, that one Aaron Porter, at the time of the execution of the said conveyance, was seised, by an elder and better title, of the premises which the defendant then undertook to convey; and, further, that afterwards the grantee of the plaintiffs, one Mark Tucker, to whom they had conveyed the same premises, with general covenants of title and warranty, by deed dated * June 29, 1803, was evicted by a judgment recovered [ * 129 ] by the said Aaron Porter in this Court, May term, 1809.
The defendant pleaded, first, a seisin in fee according to his covenants ; and, secondly, he negatives the seisin alleged of A. Porter by an elder and better title. The verdict was taken, upon the issues joined upon these pleas, for the plaintiffs.
As an eviction upon an elder and better title is specially alleged, the issue upon the seisin of the defendant would be considered immaterial, if that had been found for him, and the other issue for the plaintiffs; and, in effect, there is but one issue between the parties, which is, whether A. Porter had the legal seisin of the premises by an elder and better title than the defendant’s at the time of his conveyance to the plaintiffs. I shall therefore examine, in the first place, the supposed seisin and title of A. Porter, as it appears upon the evidence reported.
Porter’s title is derived, then, from a deed made by Ezekiel Brad *124 street to Jeremiah Allen, dated August 28, 1783 ; under which the said Allen entered, and afterwards, by a deed dated January 15. 1788, he conveyed the premises in question to A. Porter. Thus the title which Bradstreet had in August, 1783, is derived to Porter; but what was that title at the time of Bradstreet’s deed to Allen 1
From the evidence adduced for the defendant, Bradstreet, with his partner, Benjamin Nason, had then bargained with John Tyng for a large tract of land, of which the premises in question were a part. This bargain had been so far executed, as that Tyng had conveyed the bargained premises to Bradstreet and Nason, and had taken back from them a mortgage in fee of the same premises, to secure the payment of what may be presumed to be the purchase money, or a part of it, namely, the sum of £2100, with interest, payable in seven years, according to the condition of a bond of the same date. Tyng’s conveyance to B. and N. was dated July 5, 1783, and their mortgage to him the 7th of the same month. It is said that all the deeds mentioned [ * 130 ] were duly * registered soon after the execution of them.
And we must understand, therefore, as it respects the title of John Tyng, and of all persons deriving their title under the mortgage to him, that, so long as that was a subsisting mortgage, Bradstreet and Nason, and all persons deriving title from them, with notice of the mortgage, were but tenants in mortgage. The supposed partition between them, their separate conveyances to Porter and others, in short, all their dealings and transactions respecting the land conveyed by John Tyng, and mortgaged back to him to secure the purchase money, were transfers or assignmepts under the condition annexed to the mortgage, or of an equity of redemption, as it proved to be; for there is no pretence of a performance of the condition according to the terms of it.
The constructive possession of the mortgagee is important to the security of his title. It has been, therefore, long settled, by decisions of the highest authority, that the possession of the mortgagor is the possession of the mortgagee ; that he is not, but at his election, and for the sake of his remedy, liable to be disseised by any act of the mortgagor remaining, in possession ; and this latter can make no lease or contract respecting the mortgaged premises effectual to bind the mortgagee, or prejudicial to his title. (1)
Now, it appears, further, from the report of the evidence in the case at bar, that the defendant, in the year 1801, when he conveyed to the plaintiffs, held, or claimed to hold, the premises con *125 veyed to them under the mortgage made thereof, with other lands, by Bradstreet and Nason to John Tyng. The defendant is executor of the last will of John Tyng, and at his death the mortgage was subsisting. It had not been discharged, nor had the money secured by it been paid. There is no pretence that the mortgage has ever been released, or that there has been a reconveyance on the part of John Tyng, his heirs or representatives.
There is, however, an attempt to defeat or avoid the title under the mortgage, by evidence of payment; and the evidence adduced in proof of this requires to be more closely * ex- [ * 131 ] amined than it has hitherto been, both as to the competency of it in this inquiry, and as to the effects resulting from the facts proved, supposing the evidence competent.
The mortgagee, before his death, recovered judgment against Na-son, one of the parties to the bond and mortgage, for the sum of money then due upon the bond. This judgment was recovered in 1795, or before that time; for the evidence is, that the defendant, on the 15th of August, 1800, after the death of John Tyng, was in possession of an execution, dated in 1796, which had been issued upon the judgment recovered by the testator in his lifetime. Upon this execution the defendant, as executor of John 'Tyng, then gave a receipt, and acknowledged full satisfaction of the contents of the execution. Did this receipt defeat the mortgage, and operate as a reconveyance or release of the mortgaged premises ? That it was not understood or intended to have that operation, by the parties concerned in the transaction, by which that judgment may be presumed to have been satisfied, seems to be very clear from the other facts stated, as happening on the same day and the day before. (a) Nason, the judgment debtor, who, in 1785, had obtained a release from Bradstreet of all his right and interest in the premises conveyed by them to Tyng in mortgage, on the 14th of August, 1800, conveyed to James Sullivan in fee all his, Nason’s, right to the premises mortgaged as aforesaid; and on the next day, the day on which the receipt upon the execution is dated, Sullivan conveyed the same right and interest to the defendant.
*126 It may be fairly presumed, upon these facts'taken in connection, that the payment of the judgment, the only consideration of the receipt upon the execution, was an intended confirmation of the title under the mortgage. Any other supposition, or at least any supposition of the payment of money, involves this absurdity — that either the mortgagor, or the assignee of the equity of redemption, released all their interest and title, at the very moment when the money to redeem the mortgaged premises was paid to [ * 132 ] the same person * to whom the release was made. It is not easy to conceive that Mr. Pitts was, in that transaction, or in the intentions of any of the parties concerned, a purchaser for himself, without any reliance upon the title holden under the mortgage. A release was a suitable form of conveyance to confirm that title, but not likely to be accepted as an original conveyance to a purchaser having no other assurance of the premises intended to be conveyed.
It may be conjectured, indeed, that this release of the equity of redemption was obtained for the defendant, with a view to enlarge his authority, and to enable him to sell and dispose of the mortgaged premises, without the aid of a license of court; and notwithstanding the restrictions contemplated by the statute, (2) to authorize executors and administrators to make sale of real estate mortgaged to their testators, &c., whether the release had or had not this operation, is in this inquiry quite immaterial. As executor, and under the provisions of the statute, the legal estate in the mortgaged premises vested in the defendant, upon the death of his testator, as assets, and according to his trust; and his power to sell was not the question in the case of Porter vs. Tucker, (3) the grantee Of Perkins; nor is it in this case. That action is to be viewed as an attempt, on the part of Aaron Porter, to contravene and defeat the intentions of the parties to the mortgage in the adjustment made between them, upon which a discharge of the personal liability of one of the mortgagors was obtained. The attempt succeeded by the consent of the parties in that action. The present defendant was not made a party, and he is not concluded by that judgment; and his title, compared with A. Porter’s, is still open to be examined. And if the decision in this action should be found to militate with the decision in the action to which the present plaintiffs became parties in the defence, it is not a difference of opinion as to legal principles, but the consequence of a more complete disclosure and examination of facts essential to the title of the defendant in this action.
*127 * In the view we have taken of the case at bar, it is [ * 133 ] not important to the decision, to have it established beyond controversy, that the equity of redemption had been effectually assigned or released to Pitts previously to his conveyance to the plaintiffs. If the mortgage to Tyng, then vested in his executor, Pitts, was a subsisting mortgage, he conveyed to the plaintiffs a sufficient title against Porter, or any person claiming under Bradstreet by conveyances subsequent to the registry of that mortgage. We may, however, observe, upon the authority of another decision in this Court, (4) where a part of the same title was brought in question, that Bradstreet’s deed to Allen, relied on in the case at bar, as also in the case of Porter vs. Hill, had no operation, unless there is in the case at bar competent evidence of a partition by deed between Bradstreet and Nason, previous to the conveyance to Allen.
If Porter is admissible as a competent witness, not liable to an objection of interest in this suit, yet his testimony is plainly incompetent to prove a partition by deed. The only reasonable presumption that can be drawn from the facts testified by him is, that a deed, intended as a partition, was executed by Bradstreet and Nason subsequent to their mortgage to Tyng; that it was placed as an escrow in the hands of Nason’s father, to have effect when the parties to it should consent; and that this intention was mutually relinquished, and the deed cancelled, when Bradstreet afterwards relinquished his concern in the bargain with Tyng, and released to Nason all interest and title in the mortgaged premises. It was subsequent to all this that Porter inquired for the partition deed, and was told that it was not to be found.
But if we suppose a partition and conveyances under it, whatever effect these might have among the parties themselves, or against third persons, against tile mortgagee and his assigns these transactions had no effect to impair his title. The possession of the mortgagors, and of all claiming under them or either of them, was the possession of the * mortgagee and of his assigns. [ * 134 ] And the only question now to be decided is, whether the receipt by Pitts, the satisfaction acknowledged by him of the judgment against Nason, was a discharge of the mortgage.
The practice is, it is said, to admit pleas of payment after the day, as a defence in actions of ejectment, brought by a mortgagee or his assigns, against the mortgagor or any occupant of the mortgaged premises under him. A defence of this kind seems to be equitably implied in the provisions of the statute of 1785, c. 22, *128 giving remedies in equity., (a) But where the sum due is not ascertained by the contract, where it is a matter of account, where the title of the party undertaking to redeem is the matter in question I am not satisfied that the practice has ever extended, or that it can be reasonably extended, to cases of that description. (5)
But, allowing this advantage, where the mortgagee or his assigns are contending for the possession,.after the mortgage money has been paid, yet, in the case at bar, we must go further to allow it, as evidence, to defeat the title of the mortgagee, in this collateral manner, and where his grantee must be considered as in the actual possession of the mortgaged premises.
The plaintiffs had a sufficient defence against Porter’s ejectment upon this ground, if upon no other; but for the admission that the mortgage had been released, and that Pitts held under a title depending altogether upon the conveyance to him from Sullivan. For it seems to be clearly settled that the remedy of the mortgagor, or of any person claiming under the equity of redemption, against the mortgagee or his assigns, is by a bill in equity only, and that they are not liable in an action of ejectment. (6)
We may, however, go a step farther in the case at bar; and we do it, that we may terminate the controversies that have grown out of the adjustment of this mortgage, and the subsequent disposal of the premises.
If the receipt by Mr. Pitts was a matter to be considered in the action of Porter vs. Tucker, in which the plaintiffs [ * 135 ] * in the present action became parties, and now again as evidence against the title of the defendant under the mortgage, we are clear in the opinion, whether the defence is offered in a court of law or ina chancery jurisdiction, that it is competent for the defendant to explain the receipt; to show the nature of the satisfaction received, and the occasion and considerations on which it was acknowledged. It is not conclusive evidence, as a release of the judgment might have been. And the plain import of the writing is, if there is no evidence to repel this obvious presumption from the connection which the releases by Nason and Sullivan have with the receipt upon the execution, that the confirmation of the title under the mortgage was the satisfaction which Pitts received in discharge of the execution.
And upon the whole, whether the releases operated to confirm his title or not, if that was the intention of the parties, and the mortgage has. been, in fact, in no other manner satisfied, it' was a *129 subsisting mortgage when Pitts conveyed to the plaintiffs in the present action; and their title was good and effectual against Porter, and any other claiming under Bradstreet or Nason, by a title commencing after the mortgage and subject to it. (a)
If the plaintiffs have, in fact, sustained any damage or loss in consequence of the judgment rendered in the action of Porter against their grantee, Tucker, and they should fail of an indemnity in consequence of the decision in this action, their indiscretion in defending without the aid of their grantor, and in submitting to a judgment upon an imperfect statement of facts, must be regarded as the cause. There are circumstances in the two cases which too naturally excite a suspicion that the suit heretofore decided against the title of the defendant was not adverse as it appeared. It may have been got up, if I may use the expression, as a prelude to the present action.
The verdict is to be set aside, and a new trial is granted. (b)

 Cro. Jac. 659. — 1 D. & E. 378, Birch vs. Wright. — Law of Mortgages, c. 5 p. 47.

 As to the effect of a payment of the mortgage debt to discharge the mortgage, see Gray vs. Jenks, 3 Mason, 520.— Vose vs. Hardy, 2 Greenl. 322.— Inches vs. Leonard, 12 Mass. Rep. 379.— Hatch vs. White, 2 Gal. 155. — Jackson vs. Randall, 18 Johns. 7. — Jackson vs. Crafts, 18 Johns. 114. — Paxton vs. Paul, 3 Har. & M’Hen. 399.—Morgan vs. Davis, 2 H. & M'Hen. 7. — Denn vs. Spinning, 1 Hals. 471.— Wentz vs. Dehaven, 1 Ser. & R. 312. — Maynard vs. Hunt, 5 Pick. 250. — Wade vs. Howard, 6 Pick. 492.—Hooker vs. Olmstead, 6 Pick. 481. — Porter vs. Perkins, 5 Mass. Rep. 233. —Swett vs. Horn, Adams, N. H. R. 332.— Sed vide Parsons vs. Wells, 17 Mass. Rep. 419. — Sage vs. Phelps, 2 Day, 151. — Austin vs. Burbank, 2 Day, 474. — Faulkner vs. Brockenbrough, 4 Rand, 225. — Breckenridge vs. Brook, 2 Marsh. 337 —Judah vs. Judd, 1 Con. R. 309.

 Stat. 1788, c. 51.

 5 Mass. Rep. 233.

 9 Mass. Rep. 34, Porter vs. Hill.

 Gray vs. Jenks, 3 Mason, 520. — Vose vs. Handy, 2 Greenl. 322.

 See act of 7 G. 3, c. 20, § 3.

 3 Mass. Rep. 359.-7 Mass. Rep. 63

 As to what will amount to an extinguishment or discharge of the mortgage, see Gibson vs. Crehore, 3 Pick. 475. — 5 Pick. 146. — Wade vs. Howard & Al 6 Pick. 492.

b) Vide Porter vs. Hill, 9 Mass. Rep. 34.