Hornblower, C. J.
This cause comes before this court for its opinion, upon a case certified by Mr. Justice Yevius, before *406 whom it was tried at the Monmouth.- eireuit, pursuant to the provisions .of the-sixth section of the act to facilitate the administration of justice. Elm. Dig. 542. The facts of the case, and the history of what took place at the circuit, are in substance as follows:.. The-Rev. John Woodhull died-in the year 1824, seized and possessed, of a large real estate, consisting of several farms, lying.in different parts of the county of Monmouth. By his .will,, he ;devised- all his lands and real, estate, in equal parts, to his four children, John, George, Gilbert and Sarah, as tenants jn common. Sarah.died without issue, in the lifetime of her father, so. that, upon his death, the three sons, John, George and Gilbert, became entitled to the.- whole estate, taking each one-fourth part of the whole, under the will of their father, and each one-third of the remaining fourth part, as his heirs at law : the testator, as to that, having died intestate, in consequence of the death, before him, of his daughter Sarah without issue. , The will contains a clause in the following words, viz. “ And for the more convenient division of my real estate, I hereby give to my executors, or to the survivors or survivor of them, as full and ample powers to sell the same, should they think it best, as in such case executors ought to have, and to make a deed or deeds in proper manner for the same: and such sale shall be good against my heirs forever,” — and the testator appointed his said three sons his executors.
The premises in question consist of a farm and mill, usually called the Squancum .mill property, and isa part of the real estate of which the testator died seized. It was proved on the part of the plaintiff, that after the death of the testator, his son Gilbert entered upon the premises in question, and kept possession thereof until some time in the year 1830, when he died in possession, intestate, leaving the lessors of the plaintiffs, then all minors, his heirs at law : that his brother John (who in the will is called John T. Woodhull), administered upon his estate, took possession of the premises, and received the rents and profits, until, the sale by him to the defendant, as hereinafter mentioned.
The plaintiff then offered to prove that John T. Woodhull and George S. Woodhull, both of whom survived Gilbert, had admitted, at different times, that they had made a verbal division of the real estate of their father, in which the premises in question *407 had been assigned to their brother Gilbert, the father of the lessors of the plaintiff. To this evidence, the defendant objected, but the judge overruled the objection, and admitted the evidence, reserving the question, as he stated at the time, for the consideration of this court at bar.
The plaintiff farther offered to prove, that shortly after the death of the Rev. John Woodhull, his son Gilbert was in possession of the premises in dispute; that he claimed them as his own under a parol agreement with his brothers and made repairs by rebuilding the dam and a part of the mill. This evidence was also objected to, but admitted by the judge, and the question reserved as before.
The plaintiff then further proved, that John took possession of the Juques and Eatontown farms, George of the Sutphen and Lloyd farms, and Gilbert of the Squancum mills and of the Taylor and Shore farms ; all being parts of the testator’s real estate, and held and enjoyed the same as their own in severalty.
The plaintiff having rested, the defendant offered in evidence the will of the Rev. John Woodhull, and a deed from John T. Woodhull as surviving executor, (his brother George being also dead,) bearing date the 2d of April, A. D. 1838, whereby, after reciting the power to sell, contained in the will of his father, in the words thereof, and the death of his brothers and co-executors, lie says, that in pursuance of the authority so vested in him, upon the consideration therein mentioned, he granted and conveyed the premises therein described, being the premises in question in this cause, to the defendant Longstreet, in fee, together with all the interest and estate therein, of him, the said John T. Woodhull, as executor or otherwise, as well as all the interest and estate in the premises, which the testator had at the time of his death. The deed thus offered in evidence, contained also a covenant that the grantor had done nothing to incumber, and a covenant to warrant against all claiming under him or his father, the testator. The judge, however, overruled the deed as evidence, and a verdict, by his direction, was taken for the plaintiff.
Whether this verdict ought to stand, is the general question presented by this case, and the answer to that depends upon another and more specific one, viz.
*408 Whether, in this state, a mere parol partition between tenants in common, followed by several and exclusive possessions for five or six years only, will be binding and conclusive at law, upon the original tenants in common, and all claiming under them.?
So far as I can discover, from the.state of the case, there was no direct evidence of an actual conventional partition between the tenants; no witness was present at any me'eting of the parties for the purpose of making or agreeing to a partition ; and no .witness testified that any parol partition had, in fact ever been made between them. The evidence that such partition had ever been made and agreed to, in fact, was entirely inferential and deducible only from the conversations and admissions, at different times, of Gilbert, George and John, and from the fact of each having taken, possession of different parts of the estate. But passing over the unsatisfactory nature of such evidence, as a basis upon which to settle titles to real estate, it strikes me as questionable whether the admissions of Gilbert Woodhull and of George S. Woodhull were admissible for the purpose of defeating the defendant’s title, whatever may be said.of the admissions of John, under whom the defendants claimed. The defendant did not hold or claim under Gilbert or George: as to them he was a stranger, and ought not to be affected by their conversations or •admissions, when not under oath; and as to the admissions and declarations of Gilbert, it seems like permitting the lessors of the plaintiff to prove their title by the declarations of the ancestor under whom they claimed. I admit, if a mere parol partition is sufficient, the fact of such partition having been made, may be proved by parol by any competent witness, who was present when it was m’ade, and who can swear to the fact, and tell bow the premises were divided: and I admit, further, that if such parol partition is valid, then, in the absence of witnesses who were present at the making thereof, or in addition to the testimony of such witnesses, it would be competent to prove a separate and exclusive occupancy of different parts of the estate by the several tenants, for a longer or shorter time, as some evidence of a previous parol partition. But, as Mr. Justice Nevius states that no objection was made at the trial, to the admission of the evidence, on this ground, and especially as the only question discussed at the bar was the validity of a mere parol partition, I *409 forbear to express any opinion on the propriety of such evidence.
That at the common law, and before the statute of frauds, (29 Car. 2, c. 3,) tenants in common might make partition on the land, by parol, executed by livery of seizin, which was equivalent to .a feoffment, there can be no doubt. Co. Litt. 169, Id. 187. 16 Vin. Abr. 220, pl. 4. Allnatt on Partition, ch. 5, pp. 126, 127. But the statute of frauds introduced a new rule, and requires a deed or writing. I should have contented myself with a simple reference to some of the books and authorities, to this effect, if there was not, unfortunately, some difference of opinion in this matter, on the Bench. I feel bound, therefore, to give my reasons at length, and to refer, with more or less particularity, to the authorities that sustain me, as well as to notice the cases cited in opposition.
In support of their position, the counsel for the plaintiff relied much, if not entirely, on a series of cases in the state of KewYork. It -would be sufficient for me to say, that whatever those decisions may be, we are not bound by them. They are not authority in this court. We must decide the law as it is in New-Jersey. Yet, respect to the counsel, and a just deference to the opinions of courts in our sister states, upon questions relating to general principles, common to all of us, required of me that I should examine those cases: and I have not failed to do so. The cases cited were those of Jackson v. Bradt, 2 Caines’ R. 174: Jackson v. Harden, 4 Johns. R. 212; Jackson v. Vosburgh etal. 9 Johns. R. 270; Jackson v. Livingston, 7 Wend. R. 136, and Corbin v. Jackson, in error, 14 Wend. R. 619. But I can find nothing in them to warrant, or even to excuse, at this day, a departure from the long settled and well considered construction of the statute of frauds.
It will be found, upon examination, that what was said by Kent, J. in Jackson v. Bradt, 2 Caines’ R. 174, lies at the foundation of all that was afterwards said by the court in Kew-York, on this subject. The subsequent cases all refer to that as the authority upon which they rest, and to no other, either English or American, as sustaining the validity of a mere parol partition.
What, then, was the case of Jackson v. Bradt? The premises in question was a part of a very old patent. On the 27th May, 1750, a division was made by one B., and a map made out accord *410 ingly. To -this map was annexed what was called a deed of partition, of the same date, executed by the four proprietors in common, in which they covenanted.with each other, for themselves, their heirs and assigns, that the division so made and done, should thenceforth and forever stand and remain. On the trial, it was objected, that this deed was a mere covenant, and did not contain the necessary granting words to sever the estate. Upon this part of the ease, Kent, J. said, (in p. 174): “The division and the deed, between the proprietors, by which they covenanted to abide by it, and the separate possessions taken in pursuance of that division,-were sufficient to sever the tenancy in common, which consisted in- nothing but a unity of possession.” “ The parties,” he said, “ became concluded and bound by that act; and the map and deed being proved before a competent-officer, and possession having gone accordingly,” (for fifty years,) “the deed and map were admissible and legal evidence in the cause.” After quoting this language of the learned judge, I am utterly at a loss to find in it any authority for saying that a mere parol partition between tenants in common is binding and conclusive. So far from it, the judge puts himself expressly on the ground that “ the deed,” by which they covenanted to abide by the division, and the separate possessions, taken in pursuance thereof, were sufficient to sever the tenancy. It would be sufficient to say, that here had been a several possession long enough to raise the presumption of a grant, if a grant was necessary. But the question, whether a parol partition was valid and effectual, was not before the court; nor does the judge say one word to sustain such a doctrine. It was a mere question of evidence, whether that map and deed, which had been proved before a competent officer, followed, as they had been, for many years; by a corresponding possession,- was admissible and legal evidence. That they were so, there can be no doubt. It is not, therefore, a decision, that a partition by parol, without deed or writing, and unaccompanied by a long possession, is sufficient to bind the parties at law. On the contrary, the most that can be said of it is, that- the court were of opinion, that granting words were not necessary in a deed of partition, if possession was taken and held by the parties in accordance with it. And yet, upon this decision, all the other-cases cited from the New-York reports, as I have *411 already remarked, have been based. Accordingly, in Jackson v. Harden, 4 Johns. R. 202, 212, the court say: “ It did not require releases to make the partition valid. A parol division, carried into effect by possession taken according to it, will be sufficient to sever the possession, as between the tenants in common:” and they add, “ this was admitted in Jackson v. Bradt.”
If, in this case, the court intended to say that a parol partition, followed by twenty years possession, in conformity with it, will be sufficient, I shall not differ from them : but if they mean to say that a mere parol partition, followed by a corresponding several possession, for a week, a month, or a year, will be binding and conclusive at law, upon the tenants in common, I must respectfully dissent from the opinion, and be permitted to say, that so it was not “admitted in Jackson v. Bradt.”
Without any disrespect, therefore, to the courts of our sister state, I do not feel authorized to adopt, what is supposed by counsel, to be their views on this subject, in opposition to what seems to me to be the doctrine of the books.
Sir W. Blackstone, (2 Com. 323,) after stating the different modes of making partition at the common law, between joint tenants, tenants in common and co-parceners, adds: “But the statute of frauds hath abolished the distinction, and made a deed in all cases necessary.”
Again in Johnson v. Wilson, Willes' R. 248, decided in 14th and 15th Geo. 2, and cited in 16 Vin. Abr. 220, pl. 7, in margin, tenants in common appointed -arbitrators to divide, and entered into covenants to abide, &c. The arbitrators made partition, and awarded that the tenants should thenceforth hold in severalty. But it was held by Lord Chief Justice Willes, and the whole court, “ that the arbitrators had not made complete partition, not having directed any deeds to carry the same into effect, and to vest the respective shares in the particular persons.” And after stating that, at the common law, tenants in common could not make partition without deed, except by actual livery of seizin, it is added, “ a fortiori, since the statute 29 Car. 2, there can be no- partition, though by feoffment and livery, without deed.”
In Ireland v. Rittle, 1 Atkyns, 541, two sisters were seized as co-heirs; they married in 1686; the husbands made partition by parol; in 1739, a bill was filed, by the representative of one of *412 the sisters, against the surviving sister, both husbands being dead, to confirm that partition. The Lord Chancellor, after remarking that the agreement between the husbands could not bind the inheritance of the wives, says, “ a parol agreement of long standing, acknowledged by all the parties to have been the actual. agreement, and accordingly put in execution, will be established by the court.”
In Whaley v. Dawson, 2 Sch. and Lef. 367, a bill was filed for a partition : the answer set up a parol petition between the parties, and a lease of part of the premises made by one of the tenants. The plaintiff amended his bill, and sought to set aside the lease as fraudulent. To this amended bill there was a demurrer on the ground that the bill was multifarious. Lord Redesdale was of that opinion; but, in the course of his remarks, he noticed the distinction between partition at law and in equity. The first, he said, operates by the judgment of a court of law, which binds all the parties to it; but that partition in equity proceeds upon conveyances, to be executed by the parties : and if the parties be not competent to execute the conveyances, the partition cannot be effectually had. It appears, by a note to this case, that it afterwards came on to be heard upon the original bill, before Lord Chancellor Manners, who refused to decree a partition, on the ground that the plaintiff had ratified by his own acts the parol partition, and by his acquiescence for so long a time, (from 1783 till 1804,) during which the defendant’s tenants had laid out large sums in improvements, on the faith of their title being in severalty, had raised an equity which would stop the court from interposing to disturb what had been done: and that the plaintiff had, therefore, no right to more than a conveyance in pursuance of the partition already made: and mutual conveyances were decreed accordingly.
Now all these proceedings in the case last cited, and in that' from 1 Ath. 541, and the reasoning of the court, are senseless and unmeaning, if a mere parol partition, followed by a several possession, is per se, valid and conclusive upon the parties.
This subject is very lucidly treated of by Allnatt, in his prac-' tical treatise on the law of partitions, to be found in the 5th vol. of the Law Library, and 1st v.ol. of 3d series, I ought, perhaps, to do no more than cite the paves: but the importance *413 of this question, as I view it, must be my apology for the quotations I shall make.
In the second section of the first chapter of Allnatt on partition, pp. 18,19, 20, in speaking of partition between joint tenants and tenants in common, by arbitrators, he says: “Though the land itself cannot pass by the mere operation of such award, so as to vest in severalty in the parties, yet the arbitrators may order them to perfect the partition by mutual conveyances ; ” and to this effect he cites the cases I have already referred to, from Willes’ B. 248, and 1 Atk. 541, and several others. The author then states, that he has known many instances where tenants in common have entered into a deed of covenant to refer the partition to arbitrators, and have taken for granted that the award completed the title of each individual to his property. “ However,” he adds, “ it is clear, that at law, the parties are still seized as tenants in common,” and the author then proceeds to advise what should be done when such a case comes to the notice of the conveyancer. The writer occupies the residue of page 20 in noticing in what cases and under what circumstances courts of equity will carry into effect mere parol partitions, and even mere parol agreements to make partition, if in part executed and long acquiesced in.
In chapter 5, page 123, Mr. Allnatt, after noticing that a final judgment on a writ of partition is conclusive, and vests in each party a sole estate in his allotment, adds, “ that before a mere conventional agreement in pais can be complete, it is necessary, at least in the case of joint tenants and tenants in common, that mutual conveyances or releases should be executed for the purpose of vesting in each party a sole estate in his share.” The author further states, that partitions in equity, or confirmations of prior parol partitions, are sought with the view of ultimately completing the partition by causing the parties to execute proper conveyances to each other; and he then proceeds to show, pp. 28, 29, why, as between joint tenants, a mere release is sufficient: (viz. because a joint tenant is already seised per my and per tout: and a feoffment can give no further title); but that in regard to tenants in common, they have several and distinct freeholds, therefore a mere release would be invalid; but there must be actual conveyances between them. In page 130, the author says: *414 “ However, it is now quite certain that the statute 29 Car. 2, c. 3, rendered it necessary that, on partition by parceners” (even,) “ there should be a writing, and on partition by tenants in common, there should at least be a writing executed by livery. In the case of joint tenants, a deed is absolutely necessary, as it was at the common law; ” and for this he cites Oakley v. Smith, Ambl. 368; Roberts 285.
In short, upon the principles laid down by this writer, if a tenant in common marries, makes a parol partition and dies, his widow, not having conveyed her intei-est by deed, will be entitled to dower of the undivided share of the husband, and could not be restricted to dower of the particular part allotted by parol to the husband.
It is worthy of remark, too, that notwithstanding the sentiments attributed to Mr. Justice Kent, in Jackson v. Bradt, I have not been able to find, in his commentaries, (at least not in the edition which I have,) that he states any such doctrine as is contended for.
Petersdorf, in his abridgment, vol. 13, title, partition by tenants in common, says: “In consequence of the statute of frauds, no legal partition can now be made between tenants in common, without deed;” but adds, “an agreement in writing will have the same effect in equity, as an actual partition at law ;” and in the next page, the author repeats the language I have already quoted from Judge Blackstone. And last, but certainly not least, in Potter v. Perkins, 5 Mass. R. 233, Chief Justice Parsons, pronouncing the opinion of the whole court, says, in so many words, that “ since the statute of frauds, partition by parol is void.” That learned judge and his associates, would not, in a matter of such practical importance, and so directly affecting the title to lands, have put on record such an unqualified decláration, if they had not been satisfied of its correctness.
The peace of society and the security of titles, under the existing circumstances of our country, and the policy of our laws, in my opinion, strongly require an adherence to the rule, that all partitions of freehold estates, among co-tenants, should be by deed or writing. By our law of inheritance, and the prevailing habits of society, the land of almost every decedent, whether testate or intestate, comes to be divided and subdivided among *415 his children and grandchildren. Lands are now almost as much an article of sale and transfer as merchandise itself. It is the interest and policy of the country that it should be so ; and the same interest and policy requires certainty and security to be given to titles. But if partitions may be made by parol, and if not only the fact of such partition having been made and understandingly agreed to by all the parties, but the time when the partition lines, the metes and bounds, courses and distances of the several parcels apportioned to each, are all to rest in the frail memory of man : if no records or writings are to be made of such partitions, to which purchasers and heirs may resort for information and certainty, it will not only depreciate the value of real estate, derived under such partitions, by rendering titles uncertain and precarious, but, in the end, be productive of a fruitful harvest of litigation. Again, if the partition made between these brothers, was valid in law, when did it become so ? As soon as it was verbally agreed to, or not until they severally took possession ? What, then, shall amount to such possession as to bind the parties? IIow long must it continue? If for any period less than twenty years, why not ten, or five years, or one year, or a month or day ? Again, suppose two out of three, or nine out of ten co-tenants, enier upon their respective shares, take possession and make improvements in pursuance of a parol partition •, or suppose the lands are not of such a character as to be susceptible of an actual inclosure or occupation ; what is to bo done in such cases ? It has been decided in the court of chancery, in this state, that after a lawful partition, made between tenants in common, the mortgagee of an undivided share must locate his mortgage on the share set off to the mortgagor. Is the mortgagee, in such case, not only to be bound by a parol partition, but to be obliged to prove that partition, and find out, as well as he can, the lines, distances and boundaries of the share set off to his debtor, before he can enforce his mortgage ?
And yet in view of all these difficulties, we are now called upon to say, that for more than a century and a half, the bar and the bench of England, commentators, judges and chancellors, have all been in an error: that they have misconstrued the statute of frauds, and supposed it required a deed or writing of some sort, to effect a partition between tenants in common, when in fact the *416 statute requires no such thing. Whatever I might think, if this was a new question, I have not the courage now to depart from the old rule. Stare decisis, if it is ever to have any influence, ought to conclude us upon this point. It is a mistake, in my opinion, to suppose that tenants in common have not such a community of estate, as requires, under the interest, a deed or writing to put an end to. It is true they have only a privity of possession j but that privity gives each tenant in common a freehold in every part of the undivided tract: a right of possession in every square foot of it. Such a right is an interest in land that cannot be transferred, by the very terms of the statute, but by writing. An exclusive.right of possession, for any period longer than three years, cannot be created by parol; nor can such right, under a lease, be surrendered without a note in writing. Livery of seizin, at the common law, was a formal and solemn transaction, and was deemed equivalent to a feoffment, and even that was necessary to be done on the land. The statute has substituted a writing in the place of that ceremony, and we have no right to dispense with it. In my opinion, therefore, the circuit court of Monmouth, ought to set aside the verdict and grant a new trial, on the ground that a parol partition, followed by a several corresponding possession for only five or six years, was not valid and effectual at law, as between the co-tenants and those claiming under them. On another trial, the lessors of the plaintiff may show themselves entitled to recover on their father’s possession, and the descent cast upon them. If the defendant sets up the deed from the surviving executor, it will then be time enough to consider whether it conveyed any title to the defendant, and, if any, whether for the whole premises, or for an undivided portion of it only.
White, J. and Elmer, J. concurred.
Nevius, J.
This case was tried at the Monmouth Circuit, . and certain questions were reserved for the consideration and opinion of this court on a case made and certified by the judge pursuant to the statute. The case shows that the suit was brought for a farm and mills in the county of Monmouth, each of the parties claiming title under the Rev. Dr. Woodhull, who died *417 seized of the premises, in 1824, leaving three children, George, John and Gilbert. The lessors of the plaintiff are the heirs at law of Gilbert, who died intestate, in the year 1830, and upon the trial they offered in evidence and proved the last will and testament of their grandfather Dr. Woodhull, by which he devised his whole real and personal estate to his three sons above named and his daughter, each the one equal fourth part of the whole, to them, their heirs and assigns forever. And in which was contained the following clause: “And for the more convenient division of my real estate, I hereby give to my executors or the survivors or survivor of them, as full and complete powers to sell the same, should they think it best, as in such case executors ought to have, and to execute a deed or deeds in proper manner for the same; and such sale shall be good against my heirs forever.” They further proved, that the daughter of the testator died before her father, so that the whole real estate of the testator, upon his death, became vested in his three sons, as tenants-in common, either by virtue of the devise in said will or as heirs-at law. They further proved, that after the death of the testator, Gilbert took possession of the premises in question and retained them till his death, in 1830, without claim or interruption, from his brothers. That after his death, John T. Woodhull, having taken out administration on his estate, under color of said administration, (his heirs being minors,) entered into the possession of the premises, leased the same and received the rents until 1838, when as the surviving executor of Dr. Woodhull, ho sold and conveyed the same to the defendant. The plaintiffs then offered to prove, that John T. Woodhull and George S. Woodhull, who with Gilbert were the executors of their father’s will, admitted at different times, that a parol partition of the real estate of their said father, had been made shortly after his death, among his three sons and that the premises in dispute had been allotted and assigned to Gilbert, who immediately, with the consent of his co-tenants, went into possession and held and claimed the same in severalty under such partition, and at his own cost made extensive repairs and rebuilt the dam and part of the mills. This evidence was objected to by the defendant, but admitted by the court. The plaintiffs then further proved, that under this parol partition, John took possession of the Jaques *418 and Eatontown farms. George of the Sutphen and Lloyd farms, and Gilbert of the premises in dispute and the Taylor and Shore farms, being the real estate of which the testator died seized ; and each held and occupied his part in severalty, without molestation or claim from the other.
Upon this evidence the plaintiff rested his cause and the defendant offered,in evidence a deed of conveyance from John T. Woodhull, surviving executor of Dr. Woodhull deceased, for the premises in question, dated April 2d, 1838, which was objected to, and the objection sustained. No other testimony being adduced, the jury, under the charge of the court, rendered a verdict for the plaintiff. The true, if not the only question presented in the foregoing state of facts, is whether a parol partition of lands between tenants in common is valid and effectual under the laws of this state, and binding upon the parties to it, and their assigns. The father of the lessors was tenant in common with his two brothers, of all the real estate of which Dr. Woodhull died seized, and they three were also the executors of bis will, with power to sell and convey these lands “ for the more easy partition of them among the owners.”- This power was vested in them for the sole purpose of making a just and equal partition, if in their discretion it became convenient or necessary to do so. In the exercise of this discretion, very shortly after the testator’s death, they determined that it was not necessary for a convenient and just division of the lands, that they should be sold, but proceeded by mutual agreement to make partition, and consummated that agreement by an actual partition, and each entered upon the lands allotted to him respectively under that partition, and held the same in severalty. Whether this partition is or is not valid and conclusive in law upon the parties, I apprehend that the agreement to make, and the actual making of the division, terminated their discretionary power as executors to sell, for it is to all intents and purposes a unanimous declaration on their parts, that for the purpose specified in the will, no sale was “ necessary ” or “ convenient.” By this act their power over these lands as executors ceased. They so understood it, for each enjoyed the part assigned him as his own in severalty, without impeachment during their joint lives, and Gilbert, at least, if not the others, made extensive improvements at his own cost, *419 upon his part and apon the premises in question. Whatever therefore may be the binding operation of this partition upon the owners, it divested the executors, as such, of their authority over the lands, and consequently the deed from John T. Woodhull as surviving executor, to the defendant, conveyed no title for tne whole lands described in it. Whether this conveyance would he good for an undivided third part of such lands mast depend upon the character of the deed and its covenants and upon the question as to the validity of the partition. If the partition were void and the, deed from the surviving executor to the defendant granted all the estate in said lands, of which the testator died seized, and also all of which the grantor was seized after his death, and if it contains a covenant, that he has lawful authority to convey, such grant and covenant would convey a good title for the one equal undivided third part of which the grantor was seized as tenant in common.
■ But I proceed to examine the important question in the case: Is the partition proved by the plaintiff a legal and valid partition and good against the parties $ for if good against them, I apprehend it is good against all the world. It seemed to be admitted by the counsel, on the argument, that a parol partition executed by tenants in common, was binding as between themselves, but not upon third persons. But if such partition is void under the statute of frauds and perjuries, as the defendant contends, it is equally so between the original parties, as between all others.
My first inquiry is, was a parol partition between tenants in common void at common law and before the statute ? Before the statute, Littleton says, “ a partition by joint tenants is not good without deed, but tenants in common may make partition by parol and if they execute the same by livery, it is good and sufficient in law ; and therefore, where the books say, that joint tenants may make partition without deed, it must be understood of tenants in common and executed by livery.” This as is remarked by Chief Justice Willes, in Johnson v. Wilson, Wittes’ reports 253, “ was before the statute, when a feoffment might be by parol, and, therefore, as since the statute no conveyance can be but by deed, a proper conveyance has become necessary.” Other authorities might be cited to the same effect, but as they are all *420 based upon what I have cited, I deem it unnecessary to refer to them; they prove however, abundantly, that at common law such partition was good if made upon the land and accompanied by open and notorious possession. But it is said, that the statute of frauds and perjuries, which in this respect is a copy of the English statute, has changed the law and made a conveyance, or at least a writing, necessary to perfect a partition, and the defendant in addition to the case above cited, refers us to 2 Blac. Com. 323; Coke upon Littleton 187; 5 Mass. R. 233, and 1 Harr. R. 522, and he might have added numerous other authorities to the same effect, all of which however, have their origin in Coke and Blackstone. Before referring to cases adverse to those last mentioned, it is proper to examine this question irrespective of authority and upon principle.
By the tenth section of our statute, entitled “ an Act for the prevention of frauds and perjuries,” it is enacted that, “ no estates or interests of, in, to or out of any lands, shall at any time hereafter be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party &c.” The view taken by Judge Blackstone and those who have followed him, was evidently based upon the idea, that in a partition between tenants in common, as between joint tenants, an estate in lands passed, or a title was conveyed by each to the other, for Willes says, “ before the statute a feoffment might be by parol, but since the statute no conveyance can be but by deed.” In this I apprehend the learned commentator has fallen into an error, which Chief Justice Parsons and others seem to have adopted without very mature consideration. When I consider the nature of an estate in lands held in common by the tenants, I cannot so construe this section of the act as to conceive a conveyance' by deed or writing necessary to effect- a lawful partition. A tenant in common does not derive his estate or title from the partition ; its quantity and character is fixed and settled before, and is neither increased, diminished nor altered by such partition ; nor does any estate or interest pass by it. Tenants in common may have different estates in the premises, one the highest and the other the lowest, and there is .no privity between them but that of possession, and the only effect of-partition is to sever that, and determine and define the limits and boundaries of each “ whole *421 of an undivided moiety and this is as well done by parol upon the lands, followed by possession, as by deed or writing. The instant a partition is made upon the lands, and possession taken in severalty, by the parties, pursuant to it, the boundaries and limits of their respective moieties ascertained and settled by mutual agreement, the possession, which before was in common, is severed; the only privity between the tenants is destroyed, and neither has any estate or interest in the other’s share, to grant or convey. The act of partition, accompanied by an open possession in severalty, is an act of notoriety equivalent to livery of seizin at common law, and is notice to the world. The estates and interests of tenants in common, as well before as after partition, arc distinct. They cannot make a joint lease, for their estates are several and distinct, and there is no privity between them, 2 Wilson, 232; 9 Mass. 34; 11 Mass. 125. Nor can either release to the other, for there is no privity of estate to ground a release upon. Watson on conveyancing, 96. These cases show that in partition, there is no estate to convey from one to the other.
This view of this interesting question is not new; it has been sanctioned and adopted by some of the most enlightened tribunals of the country. In the state of New-York, it is considered as a settled principle. The first case I find in that court, is Den v. Bradt, 2 Caines, 174. In this oase, I admit that the question was not directly in issue, and that the principle is advanced without a reason assigned for it, but in the case of Jackson v. Harden, 4 Johns. R. 202, the question was involved, and the special attention of the court was called to it. In that case, Chief Justice Kent remarks : “ A parol division, carried into effect by possessions taken according to it, will be sufficient to sever the possessions as between tenants in common, whose titles are distinct, and when the only object of the division is to ascertain the separate possessions of each.” And although he refers as authority, to the case in Caines, yet he shows that the attention of the court was specially directed to this question, and gives the reason for his decision. In the case of Jackson v. Vosburgh, 9 Johns. 275, by the unanimous opinion of the whole bench, then one of the most enlightened judicial tribunals of the country, it was adjudged “that where the title is admitted to have been in com *422 mon, a parol partition, followed up by possession, will be valid and sufficient to sever the possession.”
In the case of Walker v. Bernard and Johnson, 1 Rep. in Court of Con. North Carolina, 84, the court say: “ The only privity by which tenants in common are united, is that of possession, and this proceeds from the impossibility of each tenant ascertaining which is his own part j when the respective severalties can be ascertained, the tenancy is dissolved. A deed is not necessary to make partition between them, for it may be done by parol, if done upon the land t this amounts to a livery in law, and is, in its nature, as well calculated to give notoriety to the transaction as if the parties had entered into a deed.”
In the case of Ebert v. Wood, 1 Binney, 216, it was decided by the court, that “a parol partition between tenants in common, made by marking a line of division on the ground, and followed by a corresponding separate possession, is good, notwithstanding the act for the prevention of frauds and perjuries.” This latter decision, however, may have been based on the equity power of the Pennsylvania court, for Chief Justice Tilghman, who delivered the opinion, says: “That this determination was founded on two principles: 1st. That where the parties have acted upon their agreement, there is no danger of perjury in proving it; and 2d. Because it is against equity that a man should refuse to perfect an agreement, from which he had derived benefit by an execution in part.” Still, I cannot perceive why a court of equity should give a different construction to a statute, from that which is given it in a court of law.
From the principles and cases above mentioned, I am of opinion, that the evidence of a parol partition was properly admitted on the trial, and the deed offered by this defendant properly rejected ; and that the circuit court be advised to dismiss the rule to show cause, and render judgment for the plaintiff.

New trial ordered.

Cited in Den v. Baldwin, 1 Zab. 399; Lloyd v. Conover, 1 Dutch. 53.