JAMES PARKER and others v. MARY A. BANKS.

*Adverse Possession—Mortgage Sale—Notice.*

1. Adverse possession is an actual, visible and exclusive appropriation of land, commenced and continued under a claim of right, with the intent to assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party as to give him a cause of action.

2. As the law never presumes a wrong, he who asserts an adverse possession against the better title must prove it, as well as allege it.

3. A mortgagor in possession being the tenant of the mortgagee, his possession is not adverse to the mortgagee.

4. A deed by the mortgagor in possession to a third party, with notice of the mortgage, conveys only the equity of redemption, and does not pass such a colorable title as may ripen by possession into an absolute legal estate.

5. Registration of a mortgage is notice to all purchasers from the mortgagor subsequent to such registration.

6. Where a mortgage is given to secure several notes falling due at different times, the possession of the mortgagor or his assignee is not to be deemed hostile to the mortgagee until the maturity of the last note.

7. Mere knowledge on the part of the mortgagee, that the mortgagor has conveyed an absolute estate in the mortgaged property to a third party, does not estop the mortgagee from asserting at any time his legal rights against such third party,

8. While it is a general rule that a power of sale under a mortgage deed must be executed by the mortgagee in person, yet if such sale be conducted by the attorney of the mortgagee, who subsequently ratifies the same by making the necessary deed for the property, the mere fact that the sale was conducted by the attorney in the absence of the mortgagee will not invalidate the title derived thereby.

9. Where a mortgage deed directs a cash sale upon default of the mortgagor he can not be heard to complain that the mortgagee sold on credit and made title to the purchaser, as such sale and conveyance extinguish the mortgage debt to the extent of the purchaser's bid.

(*Baker* v. *Evans,* 2 Car. L. R. 614 ; *Wellborn* v. *Finley,* 7 Jones 228 ; *Flemming* v. *Burgin,* 2 Ire. Eq. 584 ; *Leggett* v. *Bullock,* Busb. 283 ; *McLennan* v. *McLeod,* 70 N. C. 364 ; *Slade* v. *Smith,* 1 Hayw. 248, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1878, of PERQUIMANS, Superior Court, before *Furches, J.*

This action was brought on the 2d of July, 1877, to recover possession of a tract of land, and the facts stated in the case agreed are as follows :—

Previous to 1868, T. F. Banks was seized in fee and in actual possession of a tract of land in Perquimans county containing 960 acres. On the 10th of January, 1868, David Parker became the owner of the same by purchase at execution sale and took a deed from the sheriff. On the 16th of December, 1868, Parker at the request of Banks sold the land to C. C. Pool, and took a deed of trust to secure the payment of the notes for the purchase money,—one for $600 and three for $1,000 each due severally on the first day of January, 1870,-'71,-'72-'73, with power of sale in default of payment of either at maturity. Pool paid the first note in June, 1870, and the second, in December, 1871, and made no other payment, but conveyed to Banks 220 acres of

31

the land by metes and bounds, of which conveyance Parker had notice. Banks remained in possession under Parker after the sheriff's deed and the trust deed of Pool were executed, and accepted said deed for 220 acres from Pool, the mortgagor, and lived thereon until his death in 1873.

In June, 1872, Pool made a second deed of trust to Parker by which he conveyed the larger part of said land (740 acres) to secure other debts; and also other real and personal property, with power of sale in default of payment of the debts secured.

On the 10th of February, 1875, Parker sold the whole tract (960 acres) after advertising as provided in the deeds, and Joseph Parker, one of his sons, bid off the land for the plaintiffs, who are also his sons. The sale was made by the attorney of Parker, and no money was paid to the attorney on the day of sale, but Parker directed him to prepare a deed for him to execute to the plaintiffs for the land; Parker died soon thereafter without having executed the deed, and upon proceedings instituted to which the defendant and Pool were parties, one White was appointed trustee under said deeds, and by a judgment of the Court therein, said trustee executed a deed to the plaintiffs, but no money was paid to the trustee. Neither the defendant nor Pool had actual notice of said sale. All of the land conveyed by the second deed has not been sold, and it is insufficient to pay the debts secured.

The plaintiffs are the devisees and legatees of said Parker, and brought this action to recover the said 220 acres, and the defendant is the widow of said Banks, and has been in possession of the same since her husband's death. His Honor upon the case agreed gave judgment for the defendant and the plaintiffs appealed. The case was argued in this Court by *Messrs. Gilliam & Gatling* for plaintiffs, and *Mr. J. W. Albertson*, for defendant.

BYNUM, J. The mortgagor in possession sold and con-

veyed to his tenant, also in possession, the mortgage having been duly registered prior to the sale by the mortgagor. It is insisted that the purchaser having continued in possession for seven years after his purchase before the beginning of this action is protected by the statute of limitations against this action by the assignee of the mortgagee.

It is well settled that the mortgagor is the tenant of the mortgagee, and therefore that his possession is not hostile or adverse to the mortgagee; nor can the mortgagor make any lease or contract respecting the mortgaged premises effectual to bind the mortgagee or prejudicial to his title; neither can the assignee of the mortgagor hold possession adverse to the mortgagee, unless the assignee has taken a conveyance without notice.

But where a *bona fide* purchaser from the mortgagor entered without notice of the mortgage (which was not registered till after the commencement of the ejectment suit) and he and those claiming under him had been in the continual possession of the premises claiming under color of title for more than the time limited by statute, it was held in this State sufficient to bar the mortgagee or any claiming under him. *Baker* v. *Evans*, 2 Car. L. R. 614. And such is the general doctrine. *Perkins* v. *Pitts*, 11 Mass. 125; *Newman* v. *Chapman*, 2 Rand. (Va.) 93; Angel on Limitations, 554; *Wellborn* v. *Finley*, 7 Jones 228. Apply these principles to our case:—

It was virtually decided in *Flemming* v. *Burgin*, 2 Ire. Eq., 584, that a registered mortgage is notice to a subsequent purchaser from the mortgagor. This decision has been approved and affirmed in *Leggett* v. *Bullock*, Busb. 283, and in *McLennan* v. *McLeod*, 70 N. C. 364, and such being the obvious policy and purpose of our registration laws, as well as the convenience and good sense of the thing, it may now be considered as settled in this State, that the purchaser from the mortgagor or the mortgagee, after a mortgage

duly registered, is a purchaser with notice. Adams Eq. 152; 2 Kent 172.

The intestate of the defendant, then, purchased with notice of the mortgage and took only such title as the mortgagor had, and subject to all the stipulations contained in the mortgage deed. He simply took the place of the mortgagor, and as the mortgagor can not claim adversely to the mortgagee, neither can his assignee with notice. The right of the purchaser can in no case go beyond his own title, and whatever appears in the registered mortgage is as much an integral part of his title as if it had been inserted in his deed from the mortgagor. Such notice therefore is of the most conclusive nature and is insusceptible of being rebutted or explained away. 2 White & Tudor's Eq. Cases, 21, *LeNeve* v. *LeNeve*, and notes.

The defendant acquired by the purchase only that which the mortgagor could rightfully convey, to wit, the equity of redemption in the land; and nothing short of the payment and discharge of the mortgage debt, will change his relations with the mortgagee. Adams Eq. 110. It follows that the deed from Pool to Banks, a purchaser with notice, conveyed the equity of redemption only, and that such title is not that *colorable title*, a possession under which for seven years will bar the mortgagee's right of action. The only limitation upon the mortgagee's right of action in this case is contained in C. C. P. § 31 (3) which prescribes that where the mortgagor has been in possession, the action for foreclosure or sale shall be brought by the mortgagee within ten years after forfeiture of the mortgage, or after the power of sale became absolute, or within ten years after the last payment on the debt. Such time has not elapsed in this case.

Take another view of this action: Even assuming that Pool's deed to Banks was a colorable title, it has been long settled that the possession under it, to bar an action under

the statute, must be an adverse possession. The constructive possession was in the mortgagee, and that continued until an adverse possession commenced, and that adverse possession must have continued seven years before the. right of possession of the first grantee could be lost. *Slade* v. *Smith,* 1 Hayw. 248. But the law never presumes a wrong; hence he who alleges an adverse possession against the better title, must show it, as well as allege it.

What is an adverse possession? The term "adverse possession" says Angel on Lim. 467, "is familiar in the modern common law as denoting *disseizin* upon which an adverse title is founded; the old term 'disseizin' being expressive of any act, the necessary effect of which is to divest the estate of the former owner." Preston on Abstracts of Title, 383; 2 Ld. Raym. 829. A disseizin is where one enters, intending to usurp possession, and to oust another of his freehold; and to constitute an actual disseizin, or one in fact, there must be a tortious entry and an expulsion. Coke on Litt. 153; *Bradstreet* v. *Huntingdon,* 5 Pet. 440, and cases cited. Mr. Angel again says "that the clearest and most comprehensive definition of a disseizin and adverse possession, is, an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right,"—the claim must be adverse, and accompanied by such an invasion of the rights of the opposite party, as to give him a cause of action. It is the occupation with an *intent* to claim against the true owner, which renders the entry and possession adverse; and it is the settled doctrine that this question of adverse possession, as one of intention, ought to be found by the jury, or in some other way ascertained as an essential fact, without which the quality of the possession can not be determined. *Taylor* v. *Horde,* 1 Burr. 60; *Smith* v. *Burtis,* 9 Johns, 180; 5 Pet. 402, Angel on Lim. 476.

Apply these principles to the facts in the case agreed:

Pool was the mortgagor, Parker, the mortgagee, and Banks, the tenant in possession. Banks was already in possession as the tenant of Parker when he received the deed from Pool ; therefore he made no *entry* and expulsion under a claim of right. It is not stated as a fact, nor is there any evidence warranting such a conclusion, that after the deed to him by Pool, Banks changed his relations as tenant of the mortgagee and occupied the land *adversely* to him. Nor is it agreed as a fact, that subsequent to the execution of the deed, the occupation of Banks was with the *intention* to claim title adverse to that of the mortgagee. Indeed the case agreed states no facts accompanying the possession of Banks tending to repudiate the title of Parker. The only facts relied on are that Banks while in possession under Parker received a deed from Pool, the mortgagor, and continued to reside on the place as he had done theretofore, until his death, after which, his wife the defendant continued the possession until this action was begun. It is not stated that Banks while in possession either disavowed the title of Parker or his tenancy under him, or that he claimed the land as his own, as by refusing to pay rent, by returning it for taxation, or by acting in any other manner in hostility with his relations as tenant of the mortgagee. The deed from Pool does not profess upon its face to convey the legal title, or any interest adverse to the title of Parker, but only such estate as a mortgagor could rightfully convey. We have before seen that having bought with notice of the trust, Banks acquired only the equity of redemption, and stood in the same relation to the mortgagee as if he himself had executed the mortgage to Parker. He therefore could not have been misled to suppose that he got title for anything more than the right to redeem on payment of the money secured in the mortgage.

The several deeds are filed as a part of the case, and the operative words of the one in question, are,—" have granted

and sold, and by these presents do hereby sell and convey to the said T. F. Banks and his heirs, all our *right, title and interest* in a certain tract of land * * * to have and to hold the above described land and premises " &c. Such a deed is but a *quit claim* and well adapted to convey the equity of redemption only; and though it might operate as color of title to a purchaser without notice, we find no authority that it has such effect against the mortgagee, where the purchase is with notice and by the tenant in possession. The defendant therefore must fail upon this part of the case, for whether the deed operates as color of title or not, no adverse possession is shown by the case agreed, or can be fairly inferred from the facts stated.

There is still another view of this case, even assuming that the deed to Banks was color of title, and his possession under it was adverse to the mortgagee: From what point of time does the statute of limitations begin to run against the mortgagor or his assignee, the plaintiff? This must be determined by the provisions of the mortgage. The notes were given by Pool to Parker for the purchase money of the land mortgaged, and fell due respectively on the first day of January, 1870, '71, '72, '73; and the conditions of the trust are " to secure the payment to the said Parker of the notes aforesaid, and all interest that may accrue upon them ; and the said Parker shall have the right and option at any time after the falling due of one of the first, or any one or more of the notes aforesaid, if the said Pool shall fail to pay the same and interest, to advertise," &c. The first note, due January 1st, 1870, was, paid in June, 1870, and the note due January 1st, 1871, was paid in December, 1871, within less than seven years from the beginning of this suit, which was begun in July, 1877. The condition of the mortgage was a continuing one,—to pay in installments, at several times—and the mortgagee could await the maturity of the last note before an entry and sale, or elect to treat the non-

payment of the first, or any subsequent note at maturity as a forfeiture of the mortgage.   Certainly, Pool on the regular payment of the notes had the legal right of redemption, until the non-payment of the last note when it fell due ; and no reason is perceived why he had not the same right when the note of 1872 fell due, after the mortgagee elected to waive the forfeiture of the mortgage by receiving payment of the two notes of 1870 and 1871 after maturity.

This doctrine of election to waive or enforce a forfeiture is discussed in *Fowle* v. *Ayer*, 8 N. H. 67 ; and in Angel on Limitations, 470, and notes.   The exercise of the right of election was a matter within the sound discretion of the mortgagee, to be determined by a prudent consideration of the interests of the parties to the trust, and his action is binding upon a mere volunteer claiming as a purchaser with full notice.

Two other objections have been urged against the recovery of the plaintiff: The first is, that Parker the mortgagee had notice of the conveyance from Pool to Banks, and is therefore estopped by matter *in pais* from disputing his title. The facts upon which we are to act are thus stated in the case agreed : " In December, 1869, Pool conveyed to Banks 220 acres of the land by metes and bounds of which Parker had notice."   When or how did he receive notice ? and did he assent to the sale ?   He received no part of the purchase money, and no part of the mortgage debt was discharged, and there is no evidence that the mortgaged land exceeded in value the debt secured.   There is no ingredient of an estoppel in the case, and nothing of an acquittance or release in writing under the statute of frauds from the mortgagee, is shown.

The last objection is thus stated in the case agreed : " The sale was made by the attorney of Parker, and no money was paid to the attorney on the day of sale, but Parker directed his attorney to prepare a deed for him to execute to the

plaintiffs for the land." Parker died soon thereafter without having executed the deed. It is generally true that a mortgagee with power of sale can not execute the power by attorney and in the absence of the trustee. But it has also been held that when a sale under a mortgage is conducted by the attorney of the mortgagee in his absence, and the mortgagee, in whom the legal title as well as the power of sale coupled with an interest is vested by the mortgage, subsequently ratifies the sale by making the necessary deed for the property, the mere fact that the sale is conducted by the attorney in the absence of the mortgagee will not render the title derived therefrom, void. *Munn* v. *Burgess*, 70 Ill. 604.

Though no deed was actually executed by the mortgagee in our case, it sufficiently appears that he afterwards ratified the sale, and was only prevented by death from making the deed. We think that was sufficient here. It is not at all material whether the purchase money was paid or not, as the mortgagee's debt was extinguished to the amount of the bid, and the payment was a matter between him and the purchaser which does not affect this action. The power of the substituted trustee to execute the deed if the sale was valid is not disputed. Upon the case agreed therefore we hold that the statute of limitations does not bar the action and that the plaintiff is entitled to recover. There is error. Judgment reversed and judgment here for the plaintiff upon the case agreed.

PER CURIAM. Judgment reversed.