### CHICAGO & O. R. R. CO. v. McCAMMON.

(Circuit Court of Appeals, Seventh Circuit. May 1, 1894.)

#### No. 143.

RAILROAD COMPANIES—MORTGAGE—FORECLOSURE.

A decree foreclosing a railroad mortgage directed that the property be sold, discharged of all liens and claims against the railroad company or its receivers, and that the price be paid partly in cash, to be applied in payment of certain claims, and the rest in interest coupons. The road was sold to a purchaser who paid his bid in full, according to the directions of the court, and the sale was confirmed by the court. *Held*, that the court had no power to direct the purchaser to pay a claim which had been adjudicated against the receiver after confirmation of the sale.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Petition by William McCammon against the Chicago & Ohio River Railroad Company for an order requiring the company to pay petitioner the amount of a certain judgment. Petitioner obtained such an order, and the company appeals.

The trustees for the bondholders of the Danville, Olney & Ohio River Railroad Company, on the 17th of October, 1882, filed their bill in the court below against that company for foreclosure of a deed of trust upon the railroad of that company. In that suit a receiver was appointed on the 11th of November, 1882, who operated the road under direction of the court until it was turned over to the present appellant, upon its sale under decree of foreclosure entered on the 16th of November, 1885. The decree, inter alia, provided that no bid should be received for less than the sum of $175,000, "and that, of the purchase price so bid, not less than the sum of $25,000 shall be paid in cash, and also such other proportion of said purchase price shall be paid in cash as this court may from time to time direct, in order to meet other claims which this court has adjudged, or may adjudge, in this cause, to be prior in equity to said mortgage or trust deed,—the court reserving the right to resell, in this cause, said premises and property, upon failure to comply within twenty days with any order of this court in that regard; and the balance of said purchase price not required to be paid in cash may be paid either in cash, or the purchaser at such sale shall have the right

to satisfy his bid, in whole or in part, by paying over and surrendering the unpaid coupons or interest warrants belonging to said mortgage bonds of said defendant, the Danville, Olney & Ohio River Railroad company, of date January 1, 1880, at such price or value as would be equivalent to the distributive amount that the holders thereof would be entitled to receive thereon in case the whole amount of the bid were paid in cash." The decree further provided "that, as to so much of the purchase price as is hereby required to be paid in cash, the same shall be payable in cash, or by surrender of the certificates of indebtedness issued by Charles Howard, as receiver, while operating the said railroad, or by the surrender of approved prior claims against James A. Eads, Charles Howard, and Charles E. Henderson, while operating said road, as receivers, under the orders of this court in this cause." The decree further directed that the fund to arise from the sale should be applied—First, to the payment of the costs of the suit, the compensation of the trustees and of counsel, and to the proper expenses of sale; second, to the payment of the certificates of indebtedness issued by the receiver in the performance of his duties, and under order of the court, which certificates were specified in a certain report of the master, and to the payment of any other claims against either of the receivers, which had been adjudged, or might be adjudged, by the court, to have priority over the mortgage or trust deed, and to the payment of all taxes upon the mortgaged estate; third, to the payment of such other claims now pending in the cause, and not theretofore or therein adjudged, and which might thereafter be adjudged and decreed by the court to be prior and superior in equity to the first mortgage bonds; fourth, to the payment of matured coupons of the mortgage bonds; and, lastly, the surplus was to be applied in payment of the principal of the first mortgage bonds. The decree further provided, that the conveyance of the title to the purchaser, after confirmation of the sale, should be a perpetual bar, in law and in equity, against every claim of the railroad company, or other person claiming under it, and the purchaser should be vested with, and should hold, possess, and enjoy, the mortgaged premises, and all the rights, privileges, and appurtenances appertaining thereto, as fully and completely as the railroad company, and that the purchaser should have, and be entitled to hold, the railroad and property free and discharged from the mortgage or trust deed, a certain lease of the Chicago & Eastern Illinois Railroad Company, and all other claims of the defendant railroad company and all other parties to the suit. On the 10th of February, 1886, the property was sold by the master to Hales W. Suter and John W. Carter for the price of $175,000, which sale was confirmed by the court on the 24th of February, 1886, and a further decree was entered, that, upon the performance by the purchasers of the terms and conditions contained in the original decree directing a sale, they should be entitled to a sufficient deed of conveyance of the property. It appears by the final report of the master, dated August 2, 1884, that the purchasers at the sale had paid, in cash and in receivers' certificates, the full amount of the bid. Suter and Carter, the purchasers at the sale, assigned their rights to Austin Corbin and others, who subsequently assigned to the Chicago & Ohio Railroad Company, the present appellant, who presumably received a deed from the master, and is in possession of the property. Intermediate the sale and its confirmation, and on the 11th of February, 1886, William McCammon, the appellee, filed an intervening petition, seeking to be awarded, against the Danville, Olney & Ohio River Railroad Company and its receivers, certain damages sustained by him while in the service of the receivers, and in the operation of the railroad under them. This claim was resisted by the receivers. Over two years thereafter, and on the 30th of June, 1888, the court rendered a decree in the matter, adjudging that the intervener recover from the receivers of the road the sum of $1,000 for personal injuries sustained by him in the discharge of his duties while in the service of the receivers, and further providing that, if there should be no money in the hands of the receivers for the payment of such damages, then the purchasers of the road were ordered to pay in a sum sufficient to satisfy the claim and costs. The claim of the intervener was determined, and the decree thereon passed, without notice to the purchasers. On the 17th of July, 1888, Austin Corbin and his asso-

ciates entered a petition for rehearing of the decision of the court upon the intervening petition of McCammon, which motion was overruled on the 3d day of February, 1892. On the 25th of August, 1892, McCammon filed his petition for an order requiring the Chicago & Ohio River Railroad Company, the present appellant, to pay the amount of the judgment awarded him by the court, which petition was demurred to by the appellant. The court, on the 1st of June, 1893, upon overruling such demurrer, ordered and decreed that the Chicago & Ohio River Railroad Company should pay into the registry of the court, for the use of McCammon, the sum of $1,000, with his costs, from which last decree the present appeal is taken.

Bluford Wilson (Philip Barton Warren, of counsel), for appellant.

George A. Sanders, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

JENKINS, Circuit Judge (after stating the facts). The rights and liabilities of a purchaser at a judicial sale are measured by the terms and conditions of the decree. If the decree directs a sale subject to liens established or to be established, or subject to debts and liabilities incurred by a receiver in the management of the property, the purchaser at the sale takes the property cum onere, and liability for the claims so reserved by the decree follows the property in the hands of the purchaser, or his assignee. The liability of the appellant for the claim with which it has been charged must therefore depend upon the terms of the decree of November 16, 1885. It is clear that this property was directed to be sold, discharged of all liens and claims against the Danville, Olney & Ohio River Railroad Company, or its receivers. There is no suggestion in the decree that the road was to be sold subject to any lien whatever. The design of the court is patent upon the face of the decree,—that the fund produced by the sale was to be appropriated to the payment of all claims against the receivers before the payment of the matured coupons. The difficulty attending the payment of the appellee's recovery for damages arises from the fact that the fund obtained by the sale was insufficient, having been absorbed in the payment of other claims against the receivers before the claim of the appellee had been adjudged by the court. The sale would seem to have been made in exact accordance with the directions of the court, to have been confirmed by the court, and the conditions of the sale to have been fully met by the purchaser. We are at a loss to understand upon what principle the court can, in such case, after confirmation of the sale, and the performance of the conditions of sale, decree a further condition, which, in substance, enhances the price to be paid for the property. If the court had authority to compel the purchaser to pay one thousand dollars in addition to the price bid, it might, with equal propriety, when circumstances demanded, compel him to pay a hundred thousand dollars. The sale, when confirmed by the court, and its conditions met by the purchaser, created, in effect, a contract between the court and the purchaser, and the court could no more impose an additional term or condition upon that contract than could an individual. Farmers' Loan & Trust Co. v. Central R. of Iowa, 7 Fed.

537; Davis v. Duncan, 19 Fed. 477. The appellee acquired by his award no lien upon the property. The award would be imposed as an equitable lien upon any fund in the hands of the receiver, but there was, at the passing of the decree, no such fund. It had previously been exhausted in the discharge of other obligations. We see no propriety in imposing the burden of the payment of the appellee's claim upon the appellant. It might, we think, with equal propriety, be imposed upon a stranger to the record. The decree was allowed by the court in misconception of the terms of the foreclosure decree.

It is further insisted that the decree of June 30, 1888, to the effect that, if there were no moneys in the hands of the receivers for the payment of the amount awarded the appellee, the purchasers of the road should pay in a sum sufficient to satisfy the claim and cost, and the decree of February 3, 1892, overruling the motion of Austin Corbin and others, purchasers and assignors to the appellant, for the vacation of the decree of June 30, 1888, and for a rehearing, are res adjudicata, and binding upon the present appellant. The purchasers of the road had no concern with the claim of the appellee. They had no interest to be affected by its allowance or disallowance. The distribution of the purchase money of the property was a matter of indifference to the purchasers, with which they had no right to interfere. Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736. It would be otherwise if, by the original decree, the property was sold subject to unascertained claims. Railroad Co. v. Wilson, 138 U. S. 501, 11 Sup. Ct. 405. The purchaser was a party to the suit, and subject to the jurisdiction of the court, as respects all orders necessary to compel the completion of the purchase, but no further. Having no right to be heard as to the distribution of the fund, the purchaser could not object to the allowance of the claim of the appellee. The purchaser had not been summoned to meet the claim of the appellee, was not interested to oppose it, was not a party to the intervening petition, and could not have appealed from the decree allowing the claim. It is difficult to perceive the jurisdiction of the court to decree that the purchasers of the road should pay the amount awarded the appellee, in the event that the receiver had no funds to pay.

Afterwards, on the 17th of July, 1888, Austin Corbin and others, assignors to the appellant, moved for a vacation of that decree, and for a rehearing of the matter, which seems to have been held under advisement by the court from July, 1888, until February, 1892, when the motion was overruled, and a hearing denied. It is claimed that the intervention of the assignors of the appellant, by their motion for a rehearing, made them parties to the proceeding, and therefore they were concluded by the decree of June 30, 1888, and the order of February 3, 1892. The difficulty with this contention is that that decree was interlocutory, and could not have been appealed from. The decree established the equities, and determined that the appellee was entitled to a certain sum of money, to be paid primarily by the receiver, and, if there should prove to be no money in his hands, then by the purchaser. There was no decree against the

purchaser. Whether there should be one, and the amount thereof, depended upon a contingency not then resolved. And this appears to have been the understanding both of the court and of the appellee, for the appellee subsequently moved the court, upon the showing that the receiver had no moneys wherewith to pay his claim, for a decree requiring the present appellant to pay it. The decree of June 1, 1893, was therefore the final decree, and that of June 30, 1888, was, as to the appellant, merely interlocutory. To authorize an appeal, the decree must be final in all matters within the pleadings, so that an affirmance of the decree will end the suit. Craighead v. Wilson, 18 How. 199; Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15; Parsons v. Robinson, 122 U. S. 112, 7 Sup. Ct. 1153; Railway Co. v. Simmons, 123 U. S. 52, 8 Sup. Ct. 58; Iron Co. v. Martin, 132 U. S. 91, 10 Sup. Ct. 32; McGourkey v. Railway Co., 146 U. S. 536, 13 Sup. Ct. 170.

We are of opinion, therefore, that the appellant here was not concluded by the decree of June 30, 1888, or by the order of February 3, 1892, overruling the motion for rehearing, and that the present appeal was properly taken from the final decree of June 1, 1893, awarding judgment against the appellant for the amount of the appellee's claim. The judgment must be reversed.

---

## Upon Petition of the Appellee for Rehearing.

### (May 31, 1894.)

JENKINS, Circuit Judge. The argument for the appellee rests upon misconception of the terms of the decree. It assumes that the court directed the sale of the road at the upset price of $175,000, the purchaser taking title subject to such claims as had been or might be adjudged to be prior in equity to the trust deed. If this were so, the court committed manifest error in directing the application of the proceeds of sale to the payment of any of the adjudicated claims. The contention rests on fundamental error, rendering vicious the whole argument. The decree directs a sale fixing a minimum price to be received, but does not subject the title of the purchaser to any reserved lien. It directs that, of the amount bid, $25,000 should be paid in cash, and that such other proportion of the purchase price should be paid in cash as the court may from time to time direct, to meet claims which the court had adjudged, or might thereafter adjudge, to be prior in equity to the trust deed. The right reserved to resell was upon failure of the purchaser to comply with the order of the court in that regard; that is, in respect to the proportion and amount of the purchase price that should be ordered to be paid in cash. There is no obscurity in the language employed. There was not, as counsel suppose, any reservation of right to resell in case of failure by the purchaser to comply with any order directing payment of claims in priority to the trust deed. The purchaser conformed to every order in respect to the sale, and paid the whole amount of the bid in the manner provided

by the decree. If error intervened in the distribution of the proceeds, or in stating a minimum price insufficient to pay all claims, it was not a fault to be charged upon the purchaser. We are fully satisfied of the correctness of our decision. Rehearing denied.