JENKINS, Circuit Judge
(after stating the facts). It is contended by the appellant that, by the decrees of foreclosure and sale, the mortgaged property was not sold subject to the claims which might be adjudged paramount to the lien of the mortgages, but was sold free and clear of all claims and liens whatever. We concur in this contention so far as it asserts that the intervening claimants had and retained no equitable lien upon the mortgaged property after its sale. It is clear that the railway properties were to be sold subject to no incumbrance existing prior to the sale; nor were they sold subject to liens thereafter to be ascertained and decreed upon intervening petitions. The - contemplation of the decrees was that the property should be sold at the upset price stated, which was deemed to be, and was, sufficient to discharge all such intervening claims as should be established, and that the proceeds of the sale should be devoted to their payment before any payment upon the mortgage debt. It is undoubtedly true that the terms of the decree of sale and the decree of confirmation constitute the contract of purchase, and that, therefore, it was not within the power of the court to impose further terms, or to declare a lien upon the property not contemplated by those decrees. Railroad Co. v. McCammon, 18 U. S. App. 628, 10 C. C. A. 50, and 61 Fed. 772; Id., 18 U. S. App. 709, 10 C. C. A. 50, and 61 Fed. 772. It was also clearly contemplated that the railway would be purchased by the bondholders, secured by the mortgages foreclosed, as in fact it was, and at the upset price in the decree; and undoubtedly, if the entire purchase price had been paid in cash into the registry of the court, the purchasers would have taken the road discharged of every lien and incumbrance whatever. Such a course, however, was not in the interest of the bondholders. Numerous claims, of large amounts, growing out of the operation of the road while in the hands of the court, had been preferred. These arose upon receiver’s certificates issued by authority of *187 the court, and for car rentals and the like. They were asserted to be entitled to payment in priority to the mortgage debt. These claims were disputed by the bondholders. The court therefore did not require the purchasing bondholders to make present payment into the registry of the court of a large sum of money to be held for the payment of claims which might or might not be established, but, by the decree, required the payment of so much of the purchase price as should be necessary to discharge the claims when and as they should be determined and adjusted. By the terms of the decree, the purchasing bondholders were to be let into possession subject to the conditions of the decree, which reserved full power and jurisdiction over the property, with the right, upon default by the purchaser respecting any order for the payment of the purchase money, to retake possession of the road, and to resell the same. This was tantamount to the reservation of a lien reserved by the court upon the property for the purchase moneyj and this reserved lien was of as great dignity and potency as a purchase-money mortgage executed by the purchaser; and all subsequent purchasers of the property were bound thereby as effectually as though a purchase-money mortgage had been given and duly recorded before any conveyance by the purchaser. Knee-land, the purchaser, was bound by the provisions of the decree directing the sale and the decree of confirmation of the sale. So, also, were his grantees; and so also were the trustees in the mortgage executed by the Toledo, St. Louis & Kansas City Railroad Company and the holders of the bonds thereunder. The trust deed itself recites that the bonds were issued in part for exchange for the interests of the bondholders under the old mortgage, and in part "to provide for the discharge of all underlying liens.” There was no other lien upon this property, so far as the record discloses, except the lien for the purchase price reserved by the decree. So that the purchaser at the sale, his subsequent grantees, the trustees under the mortgage, and the bondholders, all held their interests in this property, subject to the lien imposed upon it by •the decree of sale, and subject to the payment of such amount of the purchase price that the court should decree must be paid upon the claims which had been preferred before the decree, but which had not then been adjudicated. Without question, the claimants •could rightfully invoke the power of the court to enforce that lien to render them satisfaction of their demands. They were debts which the court had incurred in the operation of this property. It was to secure payment of these debts that the court demanded, .as it might rightfully do, that the bondholders who were seeking-foreclosure of their mortgage should bid for the property a sum •sufficient to their payment, and that the payment of that sum should be charged as a purchase-money lien upon the railway. It may be true that these claimants had no direct recourse upon the court or upon this railway; but it still remains true that here were •debts which the court had incurred in protecting the property of the bondholders, and at the request of the bondholders. Under •such circumstances, no court of equity would permit the property *188 to escape from its control until such debts were adjusted and paid. These claims were thereafter adjudged and adjusted, and the court could unquestionably enforce the lien reserved for their payment, in whosesoever hands the road might come. If, therefore, the American Trust Company is in a position to assert the rights of those whose claims it was obliged to pay, and whose debts it now claims to hold, we entertain no doubt of the right of the court, by all proper proceedings, to enforce the payment of the purchase money which has not been paid, so far as it may be necessary for the satisfaction of such claims. And, in this view, it would be immaterial that the railway had passed into the possession of a purchaser without notice of this reserved lien. Such a one was bound to take notice of the provisions of the decree of sale, and of confirmation of sale. But the parties here stand in no such plight. Kneeland was the representative of the bondholders un'der the mortgages foreclosed. His conveyance to the several railways which were consolidated under the title of the Toledo, St. Louis & Kansas City Railroad was by quitclaim deeds, the consideration paid being expressed to be the capital stock of the company grantee. In other words, the old bondholders became stockholders of the present corporation; and the bondholders under the hew mortgage, if not identical with the old bondholders, were notified by the recital in the mortgage, and took their bonds subject to the payment of the purchase money of the road. There is here no bona fide purchaser without notice.
We pass to the consideration of the question whether the American Surety Company is in a position to assert the demands of the original intervening petitioners. The circumstances antecedent to and attending the execution of the first supersedeas bond are important to be considered, and may be briefly summarized. It was clearly within the contemplation of the decree of foreclosure of November 12, 18S5, that the bondholders should be granted the right to make full contest of claims, and, if any of them should be sustained by the court below, they should be protected in the right of appeal to the ultimate tribunal, and, intending to purchase the property, they desired to be protected from the enforced payment of the claims, or of that part of the purchase money which ought to be applied to the payment of the claims, until final adjudication of their validity by the courts. In that view, and for the convenience of the bondholders, the decree provided there should be excepted from present payment such final decrees upon the claims as may have been superseded by proper appeal and supersedeas bond. It would appear that prior to March 10, 1886 (the date of the confirmation of sale), some of these claims had been adjudged, although the decisión of the court thereon was not formally entered until April 5, 1886. Mr. Kneeland, representing the bondholders, during the first days of March applied to the American Surety Company to sign a supersedeas bond or bonds to enable the bondholders to stay proceedings upon the contemplated appeal, and thus to contest the claims without payment into court of the part of the purchase money of the property properly ap *189 plicable to such claims. It appears also that the American Surety Company was unwilling to become bound unless, by the decree of confirmation, the supersedeas bond should be made a prior and superior lien to all other liens upon the railroad property. This appears from the letter of the company of March 6, 1880, addressed to the clerk of the court, and by its telegram to the clerk under date of March 9th. These conditions were evidently brought to the attention of the court, and assented to by the bondholders and purchasers, for we find in the decree of confirmation of March 10, 1886, this provision: That the deed of the.master was approved with the express understanding that the court should retain full power and authority to retake possession of the property if the grantee should fail to pay the full purchase money according to the terms of the decree of sale, “and that in case any appeal is taken from any decree for the payment of money by said grantee, and supersedeas bond be given, the amount secured by said bond shall be considered as a part of the purchase money, to. enforce payment of which the court may retake said property, or any part thereof.” In pursuance of that decree the deed contained the stipulation “that all money becoming due on appeals to the supreme court shall be deemed to be purchase money, notwithstanding said decrees may have been superseded pending such appeal.” The formal order entered on April 5, 1886, adjudging the claim, decreed it to be “a prior and paramount lien upon all the railroad property and effects, of every nature and kind, pertaining to each of said divisions respectively, and prior to the rights and interests of the bondholders and purchasers thereof, and of all persons claiming by, through, or under them, or either of them, which said sum shall be paid out of the proceeds of the foreclosure sale of said property prior to any distribution of the proceeds thereof among the holders of the bonds secured by the mortgages thereon.” To this decree, Mr. Kneeland, as purchaser and trustee representing the first mortgage bondholders on the entire line of railroad covering both divisions, excepted and prayed an appeal, which was granted, the court “reserving the right to resume possession of the property on the terms mentioned in the order affirming the sale and approving the deed.” It is thus apparent that the American Surety Company entered into its stipulations of suretyship upon the express condition that the purchase money of the road should be the primary fund for the payment of such claims, notwithstanding the appeal, to which it should be' entitled to resort for reimbursement in case the decrees appealed from should be affirmed, and it should be compelled to pay the claimants under their obligation of suretyship. It is also clear that this understanding was assented to by all the parties interested, and this before the time of the confirmation of the sale; and, to carry out and make effectual such understanding, the court, by its order confirming the sale, decreed to the like effect.
We lay no stress upon the language contained in the formal adjudication of April 5, 1886, or of any of the subsequent decrees adjudging the claims which declared them to be liens upon the *190 railroad property, since, if such decrees may be treated as independent decrees entered subsequently to the confirmation of sale, it was not competent for the court, after confirmation of sale and 'delivery of the deed, to create a new charge upon the property sold. These provisions were, however, manifestly designed to express what is more aptly expressed in the decree of confirmation, that each claim was a charge upon the proceeds of sale, and that such proceeds should constitute a primary fund for payment, and that the lien reserved for payment of the purchase money might be resorted to for the.payment of the claim established either by the claimants or by the American Surety Company, obligated as surety to pay them. Such seems to have been the understanding of all parties down to the time of the filing of the intervening petition of the Continental Trust Company, which we are considering. On July 22, 1891, Mr. Kneeland, still representing the parties interested in the road, applied to the court for time to pay these claims, recognizing the right of the court to enforce payment of them notwithstanding the decree and execution of the supersedeas bond. This motion was denied, and the court directed possession of the road to be retaken unless the claims should be paid by the 10th day of September, 1891. Notwithstanding this order, the court and the American Surety Company seem to have stayed their hands, and on the 7th day of August, 1893, after the road had again passed into the hands of a receiver under the creditors’ proceedings of Stout and Purdy, by agreement of all the parties, except possibly the trustees of the mortgage, and certainly with the active co-operation and consent of Mr. Butler, one of the trustees, in his capacity as attorney, the court granted a further extension of payment for the period of one year, and directed, as a condition, that the receiver should pay the interest accruing upon the claims from the 1st day of July, 1893. We are constrained, therefore, to hold that the American Surety Company entered into its obligations upon the condition, created before the decree of confirmation of sale, and expressed in that decree and in the master’s deed, that the purchase money of the property should be the primary fund for the payment of the claims, notwithstanding the appeal and the supersedeas bonds, and that such fund might be resorted to by the surety company for reimbursement in case it should be compelled to meet its liability under the obligation of suretyship. It is a general doctrine in equity that a surety who has discharged the debt is entitled to stand in the shoes of the creditor as to all liens securing the debt. This doctrine of subrogation, it is true, is a purely equitable one, and is only enforced to accomplish the ends of substantial justice. It may be true that it should not be asserted against third persons whose rights may be subordinate to the liens of the creditor if they are prior in date to the obligation of the surety, and more specific in character than the equity of the surety.
We need not stop to consider the case of Patterson v. Pope, 5 Dana, 241, and the large number of cases to which we are referred, and which follow in its wake. It is to be observed, however, *191 that in that case the surety for the debtor entered into his obligation of suretyship after his principal had parted with all interest in the property, and that the debtor had conveyed the property free of incumbrance, and received its consideration. The court expressly disclaimed any purpose to determine “the proper limits of the right of a surety whose obligation is coeval with the debt itself, or who comes in afterwards by the act or with the consent of the creditor, or who may be supposed to have some peculiar equity against him,” but held that a surety upon an obligation incidental to the prosecution of a legal remedy against the person of the debtor “is prima facie to be considered as trusting to his principal only, for whom he alone is surety, and, upon payment, is entitled to subrogation only as to remedies against the person and property of the principal, and that, as to a prior surety or prior interest in the property which may be under pledge, he must occupy the place of the debtor.” But here the incurring of the obligation of suretyship was contemplated, and the conditions agreed to, prior to the confirmation of the sale, and they were recognized by the decree of confirmation, which determined, as between the purchaser of the property and the American Surety Company, that the purchase money should be the primary fund for the payment of the claims, notwithstanding the subsequent execution of supersedeas bonds. The obligation of suretyship was contracted upon these conditions, with the knowledge and by the consent of all parties then interested in the property. The trustees of the subsequent mortgage upon the road, and the bondholders themselves, acquired their rights under and pursuant to the decree of confirmation, and must be held to stand consenting thereto, and to be bound thereby. They must be held to have agreed, in advance of their mortgage, that the surety should have the right of subrogation upon any supersedeas bonds thereafter made, upon which appeals should be taken from any decree upon the claims, and they agreed to and consented to the right by the surety of recourse to this fund. They took their rights subject to the payment of the purchase money, and upon the express stipulation and under decree of the court that the surety should be reimbursed out of it. That purchase money has not been paid. They cannot now be rightfully held to object to its payment.
The intervening petition asks a. court of equity that the railway property may be relieved from the payment of the purchase price,, for which its title was acquired. It asks a court of equity to refuse to enforce the payment of a lien which the court had reserved' for the payment of the debts which it had incurred. It asks a. court of equity to repudiate its own obligations made in the management of the road, for the benefit of the bondholders. It asks a court of equity to repudiate its own decrees which sought to secure satisfaction of these claims. It asks a court of equity to repudiate the sanction which it had given to this surety company to enter into an obligation of suretyship upon the faith of a decree of the court, which was made a condition of the confirmation of the sale; and this notwithstanding the fact that the trustees- *192 and the bondholders take their title subject to all the conditions and reservations of the decrees of sale and of confirmation. It asks a court of equity to repudiate its own solemn decrees, that the present bondholders may escape payment of the purchase money of the very property to which they now claim to be entitled. To grant the prayer of the petition would be to work a grievous wrong. We are unable to bend our judgment to its consummation. The decree will be affirmed.