JOHN A. MERIAM vs. A. L. BROWN & others.

Middlesex. Jan. 14. — Feb. 27, 1880. COLT & LORD, JJ., absent.

A railroad corporation, which has constructed its track upon a person's land, without filing a written location or presenting a plan thereof, or paying or tendering to the landowner any damages for the land so taken, cannot enter upon the land for the purpose of removing the rails laid upon the road-bed and structures placed upon the land; such property becomes a part of the realty; and the fact that the original entry and construction were made without objection by a mortgagor in possession cannot avail against the title acquired by the mortgagee by the subsequent foreclosure of his mortgage.

BILL IN EQUITY, filed July 25, 1879, against A. L. Brown, John C. Moulton, Adams Ayer and Frederick P. Moseley, for an injunction to restrain the defendants from removing from the land of the plaintiff in Billerica certain buildings, sleepers and iron rails, placed thereon by the Billerica and Bedford Railroad Company. The case was heard by *Colt*, J., upon the following agreed facts:

The plaintiff is the owner in fee and is in possession of the land under the following title: On December 5, 1866, Maria P. Grey, then owner in fee, mortgaged the premises to the plaintiff, but remained in possession. On April 11, 1879, the plaintiff foreclosed the mortgage and sold the land, under a power of sale contained in the mortgage, to William A. Meriam, and he, on the same day, conveyed the land to the plaintiff.

On July 1, 1877, the Billerica and Bedford Railroad Company, a corporation duly organized, under the general laws of this Commonwealth, to build and operate a narrow-gauge railroad, entered upon said land, erected a car-house and certain fences thereon, dug up the land and carried gravel thereon, and laid a road-bed and certain wooden sleepers imbedded therein and iron rails attached to the sleepers, for the purpose of permanently operating and running a railroad over and across said land, which car-house, fences, gravel, and most of said rails and sleepers, now remain on the land and attached thereto. The corporation never filed any location of the railroad across, over or through said land, and never furnished the plaintiff any plan thereof, nor paid or offered to pay any land damages, nor gave any security therefor. A plan was made of a considerable tract of land,

larger than and including the land occupied by the railroad, and was used in negotiating for its purchase. The corporation operated its railroad from November 28, 1877, until January 12, 1878.

On January 25, 1878, the corporation was duly adjudged a bankrupt, and the defendants Moulton, Ayer and Moseley were duly appointed its assignees in bankruptcy. On June 6, 1878, after notice given by advertisement, the assignees sold by public auction all the rolling stock of the corporation, and all the rails, sleepers, fences, buildings and other structures on said land, to the defendant Brown, with the agreement that none of the property should be paid for by Brown until delivered. Brown paid at the sale $500 on account of the purchase; and, on July 23, 1879, at the request and by the direction of the assignees, proceeded to take up a portion of the rails, and proposed to take up and remove all the fences, buildings, rails and sleepers, claiming the right thereto.

During all the time that the corporation was entering upon and using the land, the plaintiff was living within a few miles of the premises, in a town through which the railroad ran, and the course and construction of the railroad was matter of common knowledge. Negotiations for the purchase of a tract of land, larger than and including the land occupied by the railroad, were pending between the corporation and the owner of the equity of redemption in possession; and the negotiations were entered into with a view of the corporation to purchase and the owner to sell; and the owner made no objection to the entry of the corporation, and was personally cognizant of the fact that it had entered and had constructed the railroad on the premises.

A decree was entered for the plaintiff; and the defendants appealed to the full court.

*S. Hoar*, for the plaintiff.

*C. Brigham*, for Brown.

*E. B. Callender*, for the assignees, cited *Northern Central Railway* v. *Canton Co.* 30 Md. 347; *Troy & Boston Railroad* v. *Potter*, 42 Vt. 265; *Dietrich* v. *Murdock*, 42 Misso. 279· *Thatcher* v. *Harlan*, 2 Houst. 178; *Hanna* v. *Phelps*, 7 Ind. 21.

AMES, J. "The general rule is, that the owner of property, whether the property be movable or immovable, has the right to

that which is united to it by accession or adjunction." *Wilde*, J., in *Pierce* v. *Goddard*, 22 Pick. 559. It has been held also that rails laid upon the road-bed, and fastened there, so that engines and cars can pass over them, become annexed to the realty and cease to be personal property, in the absence of any agreement changing the ordinary rule of law. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. It appears that the railroad company, although it has constructed the track upon the plaintiff's land, has never filed any written location, has presented no plan, and has neither paid nor tendered to the plaintiff any damages for land taken. St. 1874, *c.* 372, §§ 58 *& seq.* It has also ceased to do business, has become bankrupt, and its assignees have undertaken to dispose of all its property, and substantially to abandon the use of its tracks. Not having filed any written location, the corporation has not taken or appropriated the plaintiff's land for its own use in such a sense as to justify its entry upon it, or to give it any legal title or right to use or occupy it. *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574. It cannot enter upon it, except as a trespasser, even for the purpose of removing the rails which it has placed there, and which, by their annexation to the soil, it has lost the right to remove. The cases cited by the defendants are cases of roads regularly located, or in which the rails were laid with the consent of the owner of the soil, or in which the attempt to remove them was made after an acquiescence on the part of such owner for seven or eight years. In the case at bar, we find no evidence of any such consent; and even if there had been such consent by the owner of the equity, it could not avail against a title derived from the foreclosure of the mortgage. *Perkins* v. *Pitts*, 11 Mass. 125.

*Decree affirmed*