A. L. Stetson v. The Northern Investment Company et al., Appellant.

Directors: who deemed. One who, though not a stockholder in a corporation, acted as a director for two years, was treated by the officers of the company—all of whom were non-residents—as such director and gave advice concerning the affairs of the company in his city, comes within the rule applicable to dealings between a director in his own interest and his corporation.

Contract with. One occupying the relation of local director of a corporation whose stockholders were non-residents, sold property to the corporation. His valuation of the property, and his representations as to its probable rental value, were in excess of the real values, but were mere expressions of opinions. The deal was not consummated until after deliber ations by the stockholders, and until after one director familiar with real estate values in that city had visited the property and made a report. The owner of the property was not present at the meeting at which it was decided to make the purchase. Held, that since the owner had not acquired his information as to the values by reason of his position as director of the corporation, and the corporation had not relied solely upon his representation the sale would not be set aside on the ground of fraud or bad faith.

Ratification. A corporation which has purchased property of a director, had paid off incumbrances assumed by it, and had possession, management, and control for nearly three years, will be presumed to have ratified the contract, and cannot assert for the first time, as a defense in an action for the price, that the director had acted in bad faith in his representations regarding its value.

Ladd, J., took no part.

*Appeal from Woodbury District Court.*—Hon. Scott M. Ladd, Judge.

Friday, January 21, 1898.

Action for judgment on three promissory notes, and for a decree foreclosing three mortgages on separate

pieces of real estate, given severally each to secure one of said notes. Defendants answered, admitting the execution of the notes and mortgages, and alleged as defense, in substance, as follows: That during the years 1891 to 1894, inclusive, plaintiff, a resident of Sioux City, was a member of the defendant's board of seven directors, six of whom resided in Massachusetts; that plaintiff was actively engaged in the management of the affairs of the company, and better informed as to the values of real estate in Sioux City than any other of said directors; that in 1891 he was the owner of lots 4, 5, and 6, block 26, Middle Sioux City; that he repre-sented to the other directors that said lots were reason-ably worth seventy-five thousand dollars, and that it would be greatly to the advantage of the company to purchase said lots, and as a director recommended their purchase at that price; that to induce the purchase he offered that, if the defendant company would purchase said lots and put improvements thereon costing five thousand dollars, he would pay as rent therefor five thousand six hundred dollars for three years, well knowing that said sum greatly exceeded the real rental value; that said representations as to the value of said lots were untrue, and known to be so by plaintiff, and were made for the purpose of cheating and defrauding the defendant company, said lots not being worth to exceed thirty-five thousand dollars; that the directors, relying thereon, entered into a written agreement on December 17, 1891, to purchase said lots for seventy-five thousand dollars; that, in pursuance of said agree-ment, the company delivered the three notes sued upon, aggregating twenty-nine thousand six hundred and fifty-eight dollars and twelve cents, and delivered two hundred shares of its stock, and assumed and agreed to pay mortgages upon said lots aggregating twenty-three thousand eight hundred and sixty-nine dollars and thirty-two cents, and special assessments to the

amount of eight hundred and seventy-two dollars and fifty-six cents; that the company has paid all of said assessments and all of said mortgage indebtedness except about eleven thousand six hundred and eighty-three dollars, and that said shares of stock and mortgage indebtedness greatly exceed the value of said lots at the time said representations were made. Defendants allege that, by reason of said facts and false representations, said notes are without consideration, and that defendants first learned of said false representations about July 20, 1895. Defendants, as counter-claim, allege, in addition to the foregoing, that after the sale plaintiff represented that said premises could be used to better advantage by making more valuable improvements; that the company, relying thereon, was induced to make a new lease with plaintiff, whereby he was to pay a rental of five thousand eight hundred and fifty dollars for the use of the premises for three years; that after making said new lease, about September 1, 1892, plaintiff falsely represented that said premises could be rented to better advantage by the company, and proposed, in consideration of releasing him from all liability on said lease, to credit the sum of two thousand one hundred and eighty-six dollars and four cents on each of said notes, and as a director recommended the acceptance of said offer; that, believing and relying upon said representations and recommendations, the company, in consideration of said credits being made, released plaintiff from said lease; that said representations were made with the intent to cheat and defraud the company, and when made said lots could not be leased for more than two thousand dollars per year; and that defendants were damaged thereby in the sum of twelve thousand dollars. As a further counter-claim the defendants allege that, by reason of said false and fraudulent representations as to the value of said property, they had been damaged in the sum of forty

thousand dollars. Defendants ask that plaintiff's
action be dismissed; that said notes and mortgages
may be adjudged fraudulent and void; and that they
have judgment against the plaintiff for fifty-two thou-
sand dollars. Defendants, by amendment, allege that
they were ready and willing to reconvey said property
to plaintiff upon receipt of the amount paid by defend-
ants therefor, with interest, and further pray that said
contract of purchase be decreed fraudulent and void,
and that they have judgment accordingly and for dam-
ages. Plaintiff, in reply to the answer, denies that he
was ever a director of the defendant company, or acted
as such, except as follows: He avers that on the tem-
porary organization he consented to the use of his name
as director for the purpose of filing the articles of incor-
poration, and that he never had any other connection
with said corporation, and that said connection ceased
as soon as the stock thereof was subscribed; that he
never held any stock in said corporation except the two
hundred shares received in February or March of 1892,
under said contract of purchase, and which he sold and
transferred the following August; and that March or
May, 1893, he attended a meeting of the directors to
elect a successor to George Leonard, deceased, as presi-
dent. Plaintiff denies that he was better informed as
to the value of real estate in Sioux City than any of the
directors, and avers that Mr. Leonard gave more atten-
tion to and was better informed as to such values than
plaintiff. He denies that he ever made to defendants
any false and fraudulent statements with reference to
said property, or any statements or representations,
except such as he had a full right to make. In answer
to the counter-claim, plaintiff repeats the denials made
in his reply, and denies that the defendants have, by
reason of anything said or done by him, suffered any
damage or acquired any right of action against him.

Decree was rendered in favor of the plaintiff.   Defendants appeal.—*Affirmed.*

*Milchrist & Robinson* for appellant.

*Shull & Farnsworth* for appellee.

Given, J.—I.   Defendants' contentions are based upon the allegation that at the time of the transactions under consideration plaintiff was a director in the defendant company, and actively participating in the management of its affairs.   Plaintiff admits that he was chosen a director in 1891, but contends that, not being a stockholder, he was not qualified to act, and that he was merely nominally a director, and did not participate in the affairs of the company. We are in no doubt but that, whether qualified or not, plaintiff did act as a director from his election, in 1891, until July 19, 1893, at which date he presided at a meeting of the directors called to elect a president to fill the vacancy caused by the death of Mr. Leonard; also that he was treated by the officers of the company as a director, and gave advice concerning the affairs of the company at Sioux City.   We think that, for the purposes of this case, plaintiff should be considered as coming within the rule applicable to dealings between a director in his own interests and his corporation. While many authorities are cited, there is no dispute between counsel as to the rule in this state.   They cite *Buell v. Buckingham,* 16 Iowa, 284, wherein it is said: "A purchase of property by a trustee of his *cestui que* trust is not void in equity, but is voidable.   Such sale will   set aside for fraud, or upon a very slight showing of advantage or bad faith; but, when it is clear that the *cestui que* trust intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of

information acquired by him as such, it will be upheld and enforced." The inquiry is whether, in the sale of the lots or in the agreement as to rents, the plaintiff acted fraudulently or in bad faith. The complaint is that he falsely represented the value of the lots and the rental that could be readily realized therefrom. Now, while these were mere expressions of opinions, yet, where special confidence is reposed and the utmost fairness required, such opinions may show fraud or bad faith. That the values represented by plaintiff were excessive is clearly shown, and that they were known to him to be such. It does not appear, however, that the directors made the contracts solely upon the representations of the plaintiff. Plaintiff's offer to sell was under consideration for some time, thus affording opportunity for inquiry, and during that time one or more of the directors visited Sioux City. Mr. Leonard was well informed as to the values of real estate in Sioux City, and as to the character and value of this property, and was present at the meeting that accepted the plaintiff's offer. Plaintiff was not present, and did nothing to induce the purchase, except to state his opinion as to said values, and that it would be advantageous to the company to buy and lease as proposed. We are satisfied that the judgment of Mr. Leonard did more to influence the acceptance than the representations of the plaintiff. Plaintiff did not acquire his information as to these values by reason of his position as director, and, so far as appears, the corporation dealt with him in this matter as with a stranger.

II.    Let it be said, however, that, because of his relation as director, he did not act in good faith in representing the values in excess of what he believed them to be, the inquiry remains whether defendants should now be heard to complain. The contract of purchase was made December 17, 1891, the new lease May 26, 1892, and the cancellation of the lease September 1, 1892. The defendants improved the

property, and had full possession from September 1, 1892, and yet made no complaint as to the fairness of these transactions until shortly before the commencement of this action, April 11, 1895, when informed that an action would be commenced if payment was not made. For nearly three years the defendant company continued to hold this property, and to pay incumbrances thereon, as per the contract of purchase, without a complaint. In 3 Thompson, Corporations, section 4047, it is said: "If the corporation or the stockholders wish to disaffirm the transaction, this must be done within a reasonable time, accompanied, ordinarily, by an offer to put the trustee in *status quo*. The meaning is that laches—that is to say, an unreasonable delay after knowledge—will be tantamount to a ratification." Surely, a much less time was sufficient for defendants to have found the matters now complained of, and to have offered, as is now offered, to rescind the contract. The offer comes too late, not only because not made in a reasonable time, but because it is now impracticable, if not impossible, to place the parties in *status quo*. As we view it, the defendants are not only not entitled to a rescission of the contract, but, under the facts, should be held to have ratified said contracts after ample opportunity to know the facts. Our conclusion is that the decree is correct, and it is therefore AFFIRMED.