THE MERCANTILE REALTY COMPANY, Appellants, v. A. L. STETSON AND W. C. DAVENPORT, Sheriff, Appellees.

Mortgage Foreclosure: ATTACHMENT: INVALIDITY OF AS DEFENSE.
1    In a suit to foreclose a mortgage, where the mortgagee levies an attachment and the mortgagor pleads a counterclaim in defense, a subsequent owner deriving title from the mortgagor cannot set up the invalidity of the attachment levy against the mortgagee.

Receiver: FILING OF CLAIM: ESTOPPEL. Where a mortgagee com-
2    mences foreclosure of his mortgage, issuing an attachment, and afterward a receiver of the mortgaged property is appointed and makes application for an order to sell subject to the mortgages to which such mortgagee appears, and before an order of sale is granted he files his claim with the receiver, which is disallowed, but an order is granted authorizing an appeal therefrom, the mortgagee thereby elects to rely on his claim against the receiver and is estopped from proceeding against the property on a judgment of foreclosure of his mortgage.

*Appeal from Woodbury District Court.*—HON. GEO. W. WAKEFIELD, Judge.

WEDNESDAY, MAY 13, 1903.

SUIT in equity to enjoin defendants from selling a large amount of real estate in Sioux City, Iowa, under a special execution issued on a judgment rendered by the district court of Woodbury county, Iowa, in an action wherein A. L. Stetson was plaintiff, and the Northern

Investment Company, the then owner of the property, was defendant. The injunction was asked upon three grounds: First, because the attachment issued in the main suit was never levied on the property; second, because defendant Stetson is estopped by record from enforcing his attachment; and, third, because of an estoppel *in pais*. The trial court dismissed plaintiff's petition, and plaintiff appeals.—*Reversed*.

*Milchrist & Scott* for appellant.

*Shull & Farnsworth* for appellees.

DEEMER, J.—The property which defendants were about to sell on special execution at one time belonged to the Northern Investment Company, a corporation organized under the laws of the state of Kentucky. It was incumbered by mortgages amounting in the aggregate to about $400,000. On or about April 13, 1895, defendant Stetson commenced action to foreclose one of these mortgages, for something like $23,000, and in said action caused a writ of attachment to issue, which it is claimed was levied upon the property in controversy. Two days prior to that, and on the 11th day of April, one Harrison brought suit in the Woodbury district court against the investment company and Stetson to foreclose a mortgage upon the property for something like $100,000. On May 16, 1895, an order was made in this last mentioned case appointing one Black a general receiver of all the property in controversy. Black took possession of the property, collected rents, paid taxes, and interest on mortgages, made repairs, and otherwise cared for and managed the property, until December 12th of that year, when he resigned, whereupon C. D. Foster was appointed in his stead. Foster continued to manage and care for the property and during his management advanced about $9,000 in payment of interests, taxes, etc., part of which he had borrowed, and the remainder he

advanced from his own funds.   On August 3, 1896, he
filed in the district court an application for authority to
sell the real estate in controversy, subject to the mortgage
and tax liens.   This application came on for hearing on
September 1st.   Defendant Stetson appeared thereto by
his attorneys, and asked for a continuance until the next
day, which was granted.   After a full hearing, and on the
19th day of September, 1896, the court made an order
authorizing the receiver to sell the property for cash, sub-
ject to all mortgages thereon; said sale to be at auction
and without redemption.   The order for the sale was
presented to Messrs. Shull & Farnsworth, who were Stet-
son's attorneys, and they indorsed thereon: "O. K.
Shull and Farnsworth." A few days prior to the order for
the sale, Stetson recovered judgment in his attachment
case, and the decree provided that the attached property
should be sold as required by law.   Shortly before this
decree and judgment was rendered, and on the 8th day of
September, 1896, Stetson filed a claim based thereon with
the receiver, and asked that it be established as a claim
against the property of the Northern Investment Com-
pany.   Upon submission of the claim to the district court,
the following order was made: "Now, to wit, on this 17th
day of September, 1896, the report of C. D. Foster, as re-
ceiver, as to the claims filed with him, is submitted, and
the court, having received said report, finds that all of the
claims therein reported should be allowed as general
claims, except the one in favor of A. L. Stetson, and that,
as to that claim, he be authorized and directed to take an
appeal to the Supreme Court of Iowa from the decree
rendered upon which said claim is based, and that hearing
upon said report as to said claim shall be continued, to
which said order and ruling the said A. L. Stetson ex-
cepts."   On September 26, 1896, the receiver sold the
property in controversy, after due notice, to the plaintiff
herein, a corporation organized under the laws of this

state, for the aggregate sum of $5,500, which was the highest and best bid therefor. One of Stetson's attorneys attended the sale, but made no objection thereto. The sale was reported to the court and duly approved, and a receiver's deed was executed, conveying the property to the plaintiff. Thereafter Stetson caused a special execution to issue on his judgment against the Northern Investment Company, which was levied on the property in controversy, and under which it was advertised to be sold, when this action was brought to restrain the sale.

Counsel first discuss the question as to whether or not there was any valid levy of the Stetson attachment on the real estate in controversy. They claim that no notice of the levy was served upon the tenants in possession when the attachment was levied. This question seems to be settled adversely to them in *Foster v. Davenport*, 109 Iowa, 329. True, that action involved personal property only, but there was but one attachment, which was levied on real and personal property at one and the same time; and the defects, if there were any applied to the levies on both real and personal property. Moreover, the case in which the levy was made came to this court on appeal, and was here affirmed. *Stetson v. Northern Investment Co.*, 104 Iowa, 393. No question was made in that case of the validity of the levy. Another cogent and unanswerable reason why plaintiff may not assert the invalidity of the levy is found in the fact that in the original case the defendant Northern Investment Company filed a counterclaim against Stetson. See 104 Iowa, 393. Plaintiff is a purchaser deriving its title to the property from the Northern Investment Company, and, under the facts above recited, we think it clear that it cannot plead the invalidity of the attachment. *Schoonover v. Osborne*, 108 Iowa, 453; *Wright v. Mahaffey*, 76 Iowa, 96; *Baxter v. Myers*, 85 Iowa, 328. We are not to be understood as holding that the validity of the

1. ATTACH-
MENT: inval-
idity of as
defense.

attachment on the real estate has in fact been expressly adjudicated in any preceding case. All that we hold is that plaintiff, under the facts above recited, is not entitled to question it. The Northern Investment Company was content to treat the levy as valid, and, under the facts disclosed by this record, plaintiff should not be permitted to plead the invalidity thereof.

II.   The next question for consideration is the alleged estoppel of record. A. L. Stetson was made a defendant in the Harrison foreclosure case, in which a receiver was appointed for the property. Not only so, but he voluntarily filed his claim, on which he afterward obtained judgment, with the receivers. This claim was not allowed by the court, but the receivers were authorized and directed to appeal from the decree in which the judgment was rendered, and the hearing on the report as to that claim was continued. No appeal was ever taken, as we understand it, from the order authorizing the receivers to appeal, and continuing the hearing on Stetson's claim, which had been filed with the receivers. Foster, as receiver, made application in August of the year 1896 to sell the property held by him as receiver, and hearing of this application was set for September 1st. On the last named date, Stetson appeared by attorneys, and asked for and secured a continuance, which was granted. The hearing on Stetson's claim filed with the receiver was on the 17th day of September, and, as we have seen, the receiver was authorized to take an appeal from the judgment obtained by Stetson, and the further hearing of his claim was continued. On the 19th day of September the application of the receiver for authority to sell was submitted, and sustained in the following language: "It is therefore ordered that said receiver be, and he is hereby, authorized, empowered, and directed to sell the real estate of the Northern Investment Company and its trustees at public auction, for cash, subject to

2. RECEIVERS: filing of claim: estoppel.

the mortgages thereon, and without right of redemption; * * * all sales to be made subject to the approval of the court." Stetson did not appeal from this order, and the property was accordingly sold by the receiver on September 25th, subject to the mortgages thereon, to the plaintiff herein, for $5,500. The order for the sale of the property was submitted to Shull & Farnsworth, and they indorsed it: "O. K. Shull and Farnsworth."

It is manifest from this statement that Stetson was not only a party to the original Harrison foreclosure, but that he filed his claim with the receiver, appeared to the application for the sale of the real estate, and apparently by and through his attorneys, approved the order. It should be said, in fairness to these attorneys, however, that they claim they did not O. K. it as attorneys for Stetson, but in their individual capacity; they having some individual claims with the receiver. It is also clear that the order was for a sale subject only to mortgages existing against the property. As Stetson's attachment was levied pricr to the appointment of the receiver, his lien is prior to any claim under the receivership proceedings, and he (Stetson) is not concluded thereby, unless by reason of being a party to the case in which the order for the sale was made. Appellees say that, by reason of the disallowance of Stetson's claim on the hearing of the receiver's report, he (Stetson) was out of the case, and was not bound by any further proceedings therein; but it will be observed that the claim was not entirely disallowed. The receiver was authorized to appeal from the judgment allowing the claim, and the hearing upon the report as to such claim was continued. The receiver did appeal the case, and it was affirmed in this court. See case of *Stetson v. Northern Investment Co.*, hitherto cited. The argument is that, from the time of the making of this order, Stetson was out of the receivership matter and paid no further attention to it. It may be that he in fact gave it no further

attention. But he nevertheless was a party to the case from the beginning, appeared to the application for the sale, and secured a continuance of the application; and, if he failed to follow it up, it was his own fault. His claim before the receiver was merely continued, and he was in no manner dismissed from the case. It was his duty to protect his rights while his claim was pending. He was still in court, and, we think, bound by all subsequent orders made in the case—particularly the order made on the application to sell, to which he unquestionably appeared. His appearance to this application was never withdrawn, if, indeed, it could have been, and it does not lie in his mouth to say that he is not bound by what was subsequently ordered. The order to sell was within the jurisdiction of the court, and appearance to the application gave jurisdiction of the person.

But it is said that the sale was made to pay loans made to and advances by the receiver; that Stetson was not a party to the case when these claims were established, and is not bound thereby. This is beside the issues in the case. There is no controversy here over the division of the proceeds of the sale. The only question now before us is the effect and binding force of the receiver's sale. The question of division of the proceeds is not for adjudication at this time. Hence we have no occasion to consider the matter of priorities. If Stetson was such a party to the application to sell as to be bound by it, he cannot now collaterally attack the order on the ground that proper priorities were not preserved, or that the showing therefor was not sufficient to justify the order. If Stetson was not a party to the order of sale, so as to be bound thereby, then, of course, his attachment lien would not be affected by the order. But he was, we think, a party both to the original case and to the application for the order, and he is bound by the terms thereof. Of course, the receiver's possession was subject to all valid and existing liens; but

when Stetson filed his claim with the receiver, and appeared to the application to sell, he elected to rely on appropriate orders for the distribution of the proceeds of the sale, rather than upon his attachment lien, and is bound by his election. *Garner v. Fry*, 104 Iowa, 515.

Further, it is claimed that on September 18, 1896, the district court found in Stetson's original case, which was against the trustees and the receivers of the Northern Investment Company that he (Stetson) was entitled to have the property sold on special execution to pay his judgment. The difficulty with this lies in two facts: First. Stetson's claim filed with the receivers on September 8, 1896, read in this wise: "Due on decree ordered but not yet filed in the district court of Iowa in and for Woodbury county upon the foreclosure of the mortgage on lots 4, 5, and 6, block 26, Middle Sioux City, with an order for the sale of mortgaged property, $25,531.11 and costs." He thus elected to give the court appointing the receivers jurisdiction of his claim whenever it should be established in the main case. Second. Stetson appeared to the order approving the sale on September 25th, or, if we be wrong in this statement, the order for the sale which we find was binding on Stetson was made on the 19th, after Stetson had obtained his judgment and order for the sale of the attached property. Moreover, an appeal was taken from that judgment, which, as we have said, was finally settled in this court.

Again, it is argued that plaintiff is nothing more than a reorganized Northern Investment Company, but this claim is not sustained by the record. It is an independent entity, and as much entitled to protection as if it had been a separate person. The order for the sale was that it should be made without redemption, and subject to the mortgages on the separate tracts. This impliedly, at least, negatived all other liens. That the court had power to direct such sale, see *First National Bank v. Shedd*, 121 U. S. 74 (7

Sup. Ct. Rep. 807, 30 L. Ed. 877); Beach on Receivers, sections 318, 320; American & English Ency. of Law (1st Ed.) 145 *et seq.*; *O'Neil v. Van Tassel*, 137 N. Y. 297 (33 N. E. Rep. 314). A purchaser of property at such a sale as was here had looks to the decree or order for the measure of his rights. It is his muniment of title. The decree is the contract made with him, and should not be changed after he has purchased, relying thereon. When one is invited to buy upon the faith of a record, and expends his money in reliance on the integrity thereof, he should be protected. *Central Co. v. Railway* (C. C.) 30 Fed. Rep. 335.

We are constrained to hold that the defendant Stetson was bound by the order made for the sale; that he elected to rely on his remedies against the receivers, instead of on his attachment; and that plaintiff is entitled to protection. Reaching this conclusion, there is no necessity for considering the question of estoppel *in pais.*

The judgment and decree must be reversed, and, at plaintiff's option, it may have a decree in this court permanently enjoining the sale of the property on execution, or the case may be remanded to the district court for a decree in harmony with this opinion.—REVERSED.