SONKEN *v.* GEMMILL, ADMINISTRATOR, ET AL.

[No. 12,085. Filed April 9, 1926. Rehearing denied June 22, 1926. Transfer denied February 26, 1932.]

*Claude Cline* and *Mart J. O'Malley,* for appellant.
*Frank B. Jaqua,* for appellees.

McMAHAN, J.—Complaint to foreclose an equitable lien on a strip of land 66 feet wide across the land of Grier F. Gemmill, deceased, and also on the rails and ties attached thereto, and being a part of the right of way of the defunct Cincinnati, Bluffton and Chicago Railroad Company, hereafter referred to as "the railroad company," in Jay County, Indiana. A demurrer to the complaint was overruled. The facts were found specially and, in substance, are as follows: In November, 1903, the railroad company filed an instrument of appropriation in the Jay Circuit Court against Grier F. Gemmill to condemn and appropriate said strip of land; appraisers were appointed and the damages appraised at $600; Gemmill filed exceptions to the appraisement, the venue was changed to Randolph County, and in June, 1906, a judgment was rendered in his favor for $3,248, and appropriating the strip of land upon payment of the judgment; a transcript of this judgment was filed and recorded in the clerk's office in Jay County,

July 9, 1906. Immediately after the filing of the appraisers' report, the railroad company paid the $600 to the clerk of the Jay Circuit Court, took possession of the land, constructed its railroad thereon, and remained in possession thereof until September 24, 1917, using it for right-of-way purposes. The judgment of the Randolph Circuit Court in favor of Gemmill has never been paid; the amount due thereon at the commencement of this action was $5,246.40, in addition to the $600 paid to the clerk. Gemmill died intestate in 1913, the owner in fee of the real estate over which the railroad was so constructed and of said judgment rendered in the Randolph Circuit Court, leaving as his only heirs Elizabeth Gemmill and William R. Gemmill. Prior to the commencement of this action, Elizabeth, by warranty deed, conveyed her interest in said real estate, including all her right and interest in and to said right of way to William R. Gemmill, since which time the latter has been the sole owner of said real estate and judgment, subject to the right of the administrator of the estate of Grier F. Gemmill.

In March, 1908, the Huntington Circuit Court appointed a receiver for the railroad company, who immediately took possession of all of its property, and its line of railroad was thereafter operated by said receiver, from March, 1908, to September 24, 1917, when the railroad company ceased to operate its line of railroad either by receiver or otherwise, and ceased to use the easement and right of way across the said Gemmill land; in June, 1908, the receiver, by order of the court, issued and sold $95,000 of receiver's certificates for the purpose of paying certain claims against the railroad; the court directed the receiver to pay said judgment and interest thereon out of the proceeds derived from the sale of such certificates; the receiver sold the certificates, received the money therefor, but failed to pay said judg-

ment or any part thereof. In 1910, the Huntington Circuit Court made an order directing all persons holding claims against the railroad company to file the same with the clerk on or before June 10, 1910; a commissioner was appointed to investigate and report to the clerk on all claims filed; among the claims filed was the claim of Grier F. Gemmill for $4,368. On final hearing, the court found and adjudged that the judgment theretofore rendered in favor of Grier F. Gemmill for $3,248 was a valid and subsisting lien against the railroad company; that the latter had taken possession of his land for railroad purposes, had never paid such judgment or any part thereof, and that said judgment was a first and superior lien over all other liens and claims against said company. After allowing credit for the $600 paid to the clerk, there was a balance of $3,612.65 due on said judgment, and said amount was declared to be a preferred claim and it was ordered that it should be placed in "Class D" and paid by the receiver in the relative priority as indicated by the letters A to F, inclusive. The court, notwithstanding it had found the Gemmill judgment was prior and superior to all other claims, allowed certain other claims aggregating $140,158.71, which were placed in classes A, B and C, and given preference over the Gemmill judgment, and ordered the property of the railroad company, including its right of way, sold as an entirety at an upset price of not less than $800,000. The property was ordered sold free of all liens, claims and demands which had been adjudicated and placed in classes A, B, C, D, E and F. No appeal was taken from this judgment. The items in class A aggregated $18,086.68. The claims placed in class B were for labor performed under the receivership and claims for materials, etc., furnished during the receivership, including balance due the receiver and his attorney, and all legal obligations and costs under the

receivership, aggregating $18,604.83. As a part of said judgment, the court found and adjudged that the Union Trust Company, trustee, should recover from the receiver and railroad company $103,467.20, and that said claim should be placed in class C. The claims placed in class D, including the Gemmill judgment, were 34 in number, and aggregated $102,475.58. The claims allowed and placed in classes E and F were in excess of $140,-000.

The receiver continued to operate said railroad under direction of the court until September 24, 1917, when, pursuant to an order of the court, he sold said railroad property, right of way, and equipment to appellant for $310,000, the order of the court fixing the upset price at $800,000, having theretofore been eliminated. Such sale was approved by the court, and appellant immediately took possession of and claimed to be the owner of all the property and rights referred to and contained in the decree ordering the property sold. Upon taking possession of said property, appellant ceased to operate it as a railroad, and proceeded to dismantle and to tear up the rails for the purpose of converting them into salable material, and to remove them from said right of way. Neither the plaintiff William R. Gemmill, administrator, nor William R. Gemmill nor Elizabeth Gemmill ever received any part of the $310,000 for which said property was sold to appellant, for the reason that said sum was consumed in paying taxes, expenses, and indebtedness of said receivership as was subsequently determined by the Huntington Circuit Court to come within classes A, B and C, as designated by the court in its prior decree.

The court found that appellant had no right, title or interest in the 66-foot strip of land described in the complaint, or to the ties, rails, switches and the like, annexed and fixed thereto, other than such, if any, as

may have been given him by law under the proceedings in the Huntington Circuit Court, hereinbefore mentioned. Appellee, as plaintiff, filed his application for a receiver, in the instant case, to which application appellant, in open court, consented, and thereupon the court appointed a receiver, who took possession of the strip of land in controversy and of the property annexed thereto, and, by a later order of court, sold the rails, plates, bolts and fastenings situated upon said real estate, over which he had been appointed receiver, to appellant for $3,625, appellant giving the receiver his promissory note in payment of the property so purchased, and, to secure the payment thereof, appellant gave the receiver a collateral agreement wherein he and a named surety agreed that if it be adjudged that appellant was not and had not theretofore been the owner of the property so purchased by him, they would pay the note in full. This note has never been paid.

On the above facts, the court concluded as a matter of law that William R. Gemmill, as administrator of the estate of Grier F. Gemmill, succeeded to all of the rights in the judgment in favor of said decedent; that there was due and owing him as administrator on the said judgment $5,481.36; that he had an equitable lien on the easement in the 66-foot strip of land appropriated for railroad purposes, describing the same; that said lien also attached to the improvements and fixtures such as ties, rails, switches, bolts, spikes and other improvements attached to the soil over said right of way and held by the railroad company and appellant; that said lien should be foreclosed; that the easement held in said real estate by appellant and the property located thereon should be sold to make assets to pay the costs of this action and the amount so found due appellee administrator. Appellant excepted to each conclusion of law,

and judgment having been rendered in accordance with the conclusions of law, appellant appealed.

Appellant contends that his demurrer to the amended complaint should have been sustained, on the theory that it appears that the ties and rails which he was proceeding to remove were trade fixtures which he had a right to remove upon the abandonment of the railroad. Since the facts were found specially and the rights of the parties are all presented under the specifications in the assignment of errors challenging the correctness of the several conclusions of law, the overruling of the demurrer need not be considered.

Appellant, in support of his contention that the court erred in its conclusions of law, insists that Grier F. Gemmill, having appeared and filed his claim in the receivership matter, is bound by the order allowing his claim, placing it in class D, and ordering the property sold free from all the claims which had been allowed and placed in classes A to F. Appellee, however, contends that, since the railroad company failed to pay the compensation as finally fixed and determined by the court in the condemnation proceeding, it acquired no title to the easement sought to be condemned, and that it was a trespasser *ab initio*.

Appellee quotes from *Cleveland, etc., R. Co.* v. *Nowlin* (1904), 163 Ind. 497, 501, 72 N. E. 257, where the court said: "It has been uniformly held by this court that the payment to the clerk of damages awarded by the appraisers under §5160, *supra* (§3907 R. S. 1881), gives the railroad company a right to immediate possession, and a *prima facie* claim to the land, subject to an appeal in ten days after the award is filed. If no appeal is taken at the end of ten days, the title vests and relates back to the date of payment, but if an appeal is taken, no title vests and the company has only the

rights of a licensee under the statute to hold possession and proceed with the construction of the road pending litigation. When the compensation has been fully fixed on appeal, then the company must pay or tender the additional compensation fixed, if any, and on failure to do so it acquires no title to the land, and its license to hold possession and prosecute its work ceases."

We heartily concur in what the court said and held in that case, but the court was there discussing the right of the railroad to file exceptions to an appraisement after it had paid the amount of the award to the clerk and had taken possession of the land described in the instrument of appropriation for the purpose of constructing its railroad thereon. No question of waiver or estoppel on the part of the landowner was there involved.

Appellee also calls attention to the constitutional provision that "No man's property shall be taken by law without just compensation . . . first assessed and tendered" (§66 Burns 1914, §73 Burns 1926), and says that *actual payment* is a condition precedent to the vesting of any right in the company seeking to condemn.

The general rule is that where land is seized by a railroad company without right, the owner may maintain ejectment. But if the landowner acquiesces for a considerable period after the railroad company has entered upon its duties as a common carrier and the rights of the public have intervened, ejectment will not lie. *Indiana R. Co.* v. *Morgan* (1904), 162 Ind. 331, 70 N. E. 368; *McClarren* v. *Jefferson School Twp.* (1907), 169 Ind. 140, 82 N. E. 73, 13 L.R.A. (N. S.) 417, 13 Ann. Cas. 978. In the instant case, the landowner acquiesced in the use of his land for railroad purposes. After recovering his judgment for damages in June, 1906, he, without objection, stood by and permitted the railroad and the receiver thereof to operate

its line of railroad across and over his land until the date of his death in 1913. In June, 1910, doubtless being aware of the fact that he had lost his constitutional right to recover the possession of his land, he filed his claim with the receiver for the balance due, after deducting the $600 which had been paid to the clerk, and had the same allowed as a preferred claim against the receiver, and placed in class D. He made no objection to the action of the court in placing his claim in class D. He also, at that time, and as a part of the order allowing his claim, without objection, permitted the court to order the receiver to sell all of the property of the railroad *free of his claim and any lien he might have thereon.* He evidently was satisfied with the action of the court. He took no steps to have the judgment modified. He neither appealed from, nor took any steps to appeal from, that judgment. He received from the clerk the $600 which had been deposited there for his benefit. Under these facts, it seems clear that he waived his constitutional right to have his judgment paid before the final taking of his land for railroad purposes. It is the settled law of this state that a landowner may waive the constitutional provision requiring compensation to be first paid. *Board, etc.,* v. *Miller* (1882), 82 Ind. 572.

Not only did he waive his right to have the judgment paid before the taking of his land, but, by filing his claim with the receiver and having the same allowed and placed in class D, and acquiescing in the decree of the court ordering the property sold free of his lien, he cannot now be heard to complain of that decree. At the time the court ordered the property sold, Gemmill may have believed it would sell for at least $800,000, the upset price, and that his claim would be paid in full, irrespective of the question of its priority. This may be the reason no appeal was taken from the action of the court placing his claim in class

D. The court, as it had a right to do, ordered the property sold free of the claims and liens. Gemmill was a party to that action. He acquiesced in the order, and, having taken no appeal, was thereafter bound thereby, and appellees as his representatives are in no position to complain. The general rule is that one buying a railroad at a receiver's sale made under order of a court takes the property subject to such liabilities only as may be imposed upon him by the terms of the order of the court. *Houston, etc., R. Co.* v. *Crawford* (1895), 88 Texas 277, 31 S. W. 176, 28 L. R. A. 761, 53 Am. St. 752. As was said in *Chicago, etc., R. Co.* v. *McCammon* (1894), 61 Fed. 772, 10 C. C. A. 50, 18 U. S. App. 628, 709: "The rights and liabilities of a purchaser at a judicial sale are measured by the terms and conditions of the decree." And, in denying a rehearing, it was said: "If error intervened in the distribution of the proceeds, . . . it was not a fault to be charged upon the purchaser." See, also, *Olcott* v. *Headrick* (1891), 141 U. S. 543, 12 Sup. Ct. 81, 35 L. Ed. 851; *Mercantile Realty Co.* v. *Stetson* (1903), 120 Iowa 324, 94 N. W. 859.

It is quite apparent that, when Gemmill filed his claim with the receiver, he believed he was entitled to have the same allowed as a preferred claim against the receiver, and that he was entitled to participate in the funds arising from the sale of the property. His theory was that, by reason of his judgment, he was entitled to a preference in the distribution of the money over other claims. The court adopted his theory, found he was entitled to a preference over all other claims, ordered the property sold free and clear of the lien of his judgment, but the decree, instead of following this finding giving his claim priority over all other claims, placed it in class D, to his disadvantage. It would seem that a little diligence on the part of Gemmill, when

the receiver received the $95,000 from the sale of certificates, and later when the court allowed his claim and found it was preferred over all others, would have resulted in his judgment being paid in full. If there was any error in placing his claim in class D, or in ordering the property sold free from his claim, it was an error not to be charged against appellant.

In *Rio Grande, etc., R. Co.* v. *Ortiz* (1890), 75 Texas 602, 12 S. W. 1129, relied on by appellee, the purchaser of a railroad at a foreclosure sale, under a decree that the purchaser hold free of all liens and incumbrances, was held not to be an innocent purchaser as against one whose land had been appropriated without condemnation or compensation. The court, ordering the railroad sold, disallowed the landowner's claim, doubtless upon the theory that it was not a claim or lien upon the right of way and consequently not affected by the sale, while, in the instant case, the claim was allowed, and the lien thereof in legal effect transferred to the funds arising from the sale. In that case, the purchaser took possession of the right of way and continued to use it for railroad purposes, while, in the instant case, appellant, on completing his purchase, immediately ceased to use the property for railroad purposes, and proceeded to dismantle and tear up the tracks, for the purpose of removing them from the right of way formerly used by the railroad. If appellant had continued to use the property for railroad purposes without paying the Gemmill judgment, a different question would be presented for our consideration. Upon the abandonment of the land for railroad purposes, the land reverted to appellee William R. Gemmill, subject to the right of appellant to remove the rails, ties, etc., which had been placed thereon. There was no easement left in appellant after the abandonment upon which a decree of foreclosure could be had.

Appellees insist that the action of the Huntington Circuit Court in allowing the Gemmill claim and ordering the receiver to sell the property free from such claims must be ignored. This we cannot do. Gemmill voluntarily entered his appearance in the receivership proceeding. He filed his judgment as a claim against the estate in the hands of the receiver. He thus invoked the jurisdiction of that court. The court had jurisdiction and acted. The decree of the court may have been erroneous, and might have been reversed on appeal. It remains in full force and effect, and by it we are bound. Appellant purchased the property relying on a decree ordering it sold free of the Gemmill judgment, and we hold he took the property free from the lien of such judgment. In *Meriam* v. *Brown* (1880), 128 Mass. 391, the owner of certain land, in 1866, mortgaged the same to Meriam, who, in 1879, foreclosed the mortgage and sold the land under a power of sale contained in the mortgage. The purchaser at such sale then conveyed the land to Meriam. On July 1, 1877, a certain railroad company entered upon the land, erected a car house and certain fences, constructed its road bed and laid its tracks thereon for the purpose of permanently operating a railroad across the land. The railroad company never filed any location of the railroad across the land, and never furnished the plaintiff any plan thereof, nor paid nor offered to pay any damages for the taking of the land, nor gave any security therefor. The railroad was in operation about six weeks when it was adjudged a bankrupt, and the rolling stock, rails and other structures on the land ordered sold, and, after notice, were sold to the appellee, Brown, who proceeded to take up and remove the rails. As was pointed out by the court, the railroad company having failed to make any written location, had not taken or appropriated the land in such a sense as to justify its entry upon

it, or to give it any right to occupy it. And, having abandoned the road, and being a trespasser thereon, it was held it could not reenter thereon, except as a trespasser, for the purpose of removing the rails which it had placed thereon and which the court held by their annexation became a part of the real estate, and, being so annexed by accession, could not be removed. This case recognized the right of removal where the road had been regularly located, or where the rails were laid with the consent of the owner of the soil or where there had been an acquiescenece on the part of the owner for seven or eight years. And it is to be observed there was no decree against the landowner ordering the property sold free of his lien, as in the instant case.

*Organ* v. *Memphis, etc., R. Co.* (1888), 51 Ark. 235, 11 S. W. 96, was a suit to enjoin the appellee from using certain lands for railway purposes until compensation was paid. The appellee and its predecessor had taken possession of the property involved without any proceeding to condemn, and without any agreement with or consent of the owner. The statute provided no remedy for the owner to obtain damages for land taken by a railroad. No question of estoppel or waiver on the part of the landowner was involved. The lower court dismissed the complaint, and, on appeal, the cause was reversed for the purpose of having the damages assessed and for an injunction if the damages were not paid within a reasonable time after being assessed.

In *Bridgman* v. *St. Johnsbury, etc., R. Co.* (1886), 58 Vt. 198, 2 Atl. 467, the railroad company in 1871, without right or leave, entered upon the land and constructed its road thereon, and continued to run the same until December, 1877, when, because of its insolvency, receivers were appointed, who continued to operate the road until July, 1880. The landowners, in 1876, began an action against the railroad company for damages for

taking their land, and, in June, 1877, recovered a judgment for $968. In July, 1880, the company that had so taken possession of the land was merged with other companies into a new corporation, the new corporation being the defendant and appellee in that case. An action was then commenced against the new company to foreclose a lien on the land taken. It was there held that the new company took the land subject to the existing rights of the landowners as judicially established under the statutes.

In *New York, etc., R. Co.* v. *Stanley's Heirs* (1882), 35 N. J. Eq. 283, Henry Stanley agreed in writing with a certain railway company to convey by warranty deed certain land for railroad purposes. The deed was to be upon condition that the company would establish a depot at a certain location and maintain the same for a period of 10 years, and that the railroad would be completed and in operation within two years. The company at once took possession of the land under the agreement and constructed its railroad thereon, but neither it nor its successors performed any of the conditions named in the contract. About seven months after the contract was entered into, the railroad company mortgaged its road and franchise. This mortgage was foreclosed in 1873, and a sale effected in 1875. The purchasers organized another company, which again mortgaged the property, which, on foreclosure, was sold in 1878 to the appellant railroad. Stanley having died, his heirs, in 1879, brought a suit in ejectment, whereupon the railroad then in possession of the land brought an action to enjoin the prosecution of the ejectment proceedings, and offered to perform the agreement of 1870, or to pay such damages as might be equitable. It was conceded the landowners were entitled to compensation. The railroad contended that it should only be charged with the

value of the land as of the date when it took possession under its purchase, while the landowners contended they were entitled to the value of the land at the time of the original taking in 1870, and their damages at that time, " 'together with interest on the said value of the said land, and on said damages, from the time of taking of said land.' " The contention of the landowners was sustained.

In *Buffalo, etc., R. Co.* v. *Harvey* (1884), 107 Pa. St. 319, a railroad gave a mortgage upon its property. Later, it entered upon and appropriated the land of Harvey without paying him or giving any security therefor. Harvey thereupon filed his petition for the appointment of viewers to assess his damages and judgment was thereafter awarded him. Later, the company being insolvent, a receiver was appointed therefor. A year later a trustee for the bondholders commenced suit to foreclose the mortgage. A decree was rendered whereby the receiver was ordered to sell the property, which was done, the purchaser thereafter selling to the predecessor in title to the appellant railroad. A writ of *scire facias* to revive the judgment was brought, with notice to the appellant, and judgment was claimed against it. The appellant railroad contended that the judgment of Harvey was divested by reason of the foreclosure sale. The court held that the amount of damages assessed was the price of the purchase of the privilege of using the land, saying: "This sum inheres in the land. Until paid or secured, the owner of the land stands on the impregnable language of the Constitution that his private property shall not be taken. It follows that, although the rights of the corporation which took possession of the land may be transferred to another, yet they pass subject to the paramount constitutional right of the owner of the legal estate in the land. A judicial

sale made on another lien does not divest the title which he has in and to the land."

In none of these cases was there a decree of court to which the landowner was a party, allowing his claim and ordering the property sold free of the lien of the former owner, as in the instant case.

There is no claim that appellant was required to operate the railroad after his purchase, or that he had no right to cease to operate it. It probably was understood by all the parties that appellant was buying it for the express purpose of tearing up the rails and converting them into salable material. Appellee has called our attention to *Union Trust Co.* v. *Curtis* (1914), 182 Ind. 61, 105 N. E. 562, L. R. A. 1915A 699, and *Union Trust Co.* v. *Curtis* (1917), 186 Ind. 516, 116 N. E. 916. A reading of these cases clearly shows that the sale made by the receiver to appellant was with the understanding that the property would be converted into junk and sold as such.

Judgment reversed, with directions to restate the conclusions of law in accordance with this opinion.