WILLIAM WEINER, trustee, *vs.* BOSTON AND MAINE CORPORATION & another.

Suffolk.    January 5, 1972. — March 15, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Railroad,* Service.  *Deed,* Property conveyed, Railroad property. *Words,* "Abandonment."

A railroad did not abandon passenger service within the meaning of covenants in a deed by it conveying certain of its property but reserving to itself the right to maintain and use structures and equipment located on, and to operate trains over, the conveyed property where, although the Interstate Commerce Commission granted an application by the railroad to discontinue passenger service, the railroad nevertheless continued to maintain such service under a financial agreement with the Massachusetts Bay Transportation Authority.  [429–430]

The fact that a railroad in conveying certain land on which a viaduct was located reserved a right to use, repair, replace and remove the viaduct was not sufficient to show that the viaduct was excepted from the conveyance.  [430]

BILL IN EQUITY filed in the Superior Court on January 16, 1967.

The suit was heard by *Kalus, J.*

*Frederic N. Halstrom* (*Joseph Schneider* with) for the plaintiff.

*John E. O'Keefe,* for the Boston and Maine Corporation (*Thomas L. Sullivan,* for the Massachusetts Bay Transportation Authority, with him).

TAURO, C.J. In this bill for declaratory relief the plaintiff (as successor to the original grantee) seeks a declaration that the defendant Boston and Maine Corporation (the Railroad) [1] within the terms of a deed of conveyance has abandoned its passenger service, and that the viaduct on the land was not part of the conveyance and therefore the plaintiff is entitled to reimbursement for the real estate taxes he has paid.

The plaintiff appeals from a final decree wherein the judge ruled that the Railroad "has not abandoned passenger service as that term is used and applied in this particular case," and that the deed conveyed title to the viaduct which obligated the plaintiff to pay the taxes on the viaduct. There was no error.

The facts pertinent to the issues raised are as follows. On January 12, 1959, the Railroad conveyed to the plaintiff's predecessor a parcel of land in Lynn which included a railroad station, passenger facilities and a viaduct. The indenture reserved to the Boston and Maine Railroad and its successors and assigns the right to maintain and use "the viaduct, bridges and the trackage, track materials, signals, trackage appurtenances and signal appurtenances on said viaduct and bridges . . . and the right to operate on said trackage with locomotives, trains and cars as a part of its railroad route . . .." The deed also required the grantee and her heirs and assigns "to maintain [said property] without charge or cost to the grantor . . . for a period of one hundred years . . . provided however, that said covenants shall terminate . . . [if] the

---

[1] The defendant Boston and Maine Corporation is successor to Boston and Maine Railroad by merger.

grantor, its successors or assigns, abandons passenger service to and from [said railroad station] . . .."

In 1964, the Railroad petitioned the Interstate Commerce Commission for leave to discontinue its passenger service. The petition was granted on January 15, 1965, but there was no revocation of the franchise.

On December 14, 1964, the defendant, Massachusetts Bay Transportation Authority (the Authority) and the Railroad entered into an agreement whereby the Railroad would continue to operate its passenger service in an area which included the station in Lynn using its own equipment, employees and management. The Authority agreed to reimburse the Railroad for any losses sustained in the operation. In effect this was a financial arrangement between the parties to insure a continuation of passenger service by the Railroad and we so construe the agreement.

1. Upon these facts we conclude that the Railroad has not abandoned passenger service within the meaning of the deed covenants. The Interstate Commerce Commission gave the Railroad permission to discontinue passenger service, a right which was not exercised. On the contrary, as a result of its agreement with the Authority, the Railroad continued passenger service without interruption. "The Interstate Commerce Commission has defined the term 'abandonment' . . . as requiring 'cessation of service . . . or long disuse of the line, coupled with the intention not to resume such service or use.' . . ." *Wilmington* v. *Department of Pub. Utils.* 341 Mass. 599, 602. The evidence indicates that the Railroad may have contemplated discontinuing its passenger service but, upon receiving assurances of financial assistance from the Authority in case of operating losses, did not exercise its right but, instead, continued with the service as an independent contractor. The Railroad, under the agreement, retained complete control over its "management, operation and affairs."

The case of *Boston Elev. Ry.* v. *Commonwealth,* 310 Mass. 528, 572, relied on by the plaintiff in urging that there has been an abandonment of passenger service can

be distinguished. In that case not only was there a stated intention by vote of the Boston Elevated Railway trustees to discontinue service commencing October 1, 1938, but there was "actual failure of the company to furnish such service for more than ten months from October 1, 1938, to the date of the declaration of forfeiture, . . . [and] such failure was in no real sense temporary, but rather was permanent . . .." In the instant case the contemplated abandonment was not carried out, even temporarily, the franchise was not revoked by the Interstate Commerce Commission and the Railroad continued to furnish passenger service.

2. The plaintiff's claim for reimbursement for taxes paid by him is based on his contention that the viaduct was not conveyed to his predecessor in title by the Railroad's deed of January 12, 1959. That deed described the land conveyed by metes and bounds and also identified it as "Parcel I" on a specific plan to be recorded with the deed. The plaintiff argues that the Railroad, by reserving to itself the right to use, repair, replace and remove the viaduct, exempted in the deed all "indicia of ownership" which were necessary to transfer title in the viaduct to the grantee. We cannot agree. The conveyance of the land carried with it all permanent buildings and structures thereon, including the viaduct, whether specifically mentioned in the deed or not. *Noble* v. *Bosworth*, 19 Pick. 314. *Winslow* v. *Merchants Ins. Co.* 4 Met. 306. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Meriam* v. *Brown*, 128 Mass. 391. The deed contained a provision "[e]xcepting and reserving . . . [to the Railroad] the right to maintain and use the viaduct, bridges and the trackage . . . on said viaduct and bridges . . .." Such reservation would have been unnecessary if the viaduct had not been conveyed. Moreover, as a further indication that the parties intended to convey the viaduct is the fact that the plaintiff and his predecessors in title have paid the taxes on all the property including the viaduct since 1959. See *Rizzo* v. *Cunningham*, 303 Mass. 16, 21.

*Decree affirmed.*